## E. F. BYRNE V. JAMES LOVE AND OTHERS.

See this case for a discussion of guardianship by nature, under the Statutes of this State.

The power of the father, as guardian by nature, under our Statute, over the person and estate of his minor child, is not assignable by deed without confirmation by the County Court.

It seems that after an illegitimate child attains the age of seven years, the father has an equal claim with the mother, to the guardianship ; and where the property of the child is derived from the father, that would turn the scale in his favor, unless counter-balanced by objections, of sufficient weight, to the contrary.

Appeal from Galveston.   This suit was brought in the name of Edward F. Byrne, an infant of ten years of age, by his mother, calling herself his natural guardian and next friend, to recover from the defendants, possession of a lot of ground in the city of Galveston, and damages for its occupancy.

The petition alleged that said Edward was the son of Wm. C. and Ann C. Byrne ; that Wm. C. Byrne, in the year 1838, was lawfully married to one Jane Heatherington, who was still living, and from whom he had never been divorced ; that in 1839 he married said Ann, who was wholly ignorant of the first marriage.   It alleged title to the premises in Edward, by virtue of a deed from the defendant Love, which was annexed to the petition ; but that defendants claimed possession of the premises under some pretended color of title from the said Wm. C. Byrne ; and that the defendant Love claimed the right to receive the rents and profits ; denied such right or any control over the property by W. C. B. or Love ; charged that W. C. B. had abandoned Edward and gone to foreign parts, and that he and Love were insolvent ; prayed an injunction restraining any payment of rent to Byrne or Love ; alleged the annual rent to be worth $450, and that defendants had occu-

pied it since February, 1848 ; prayed to recover the property and damages and for general relief.

The Judge granted the injunction.

The defendants answered under oath,

1st. A plea denying that Ann C. Byrne was the natural guardian, and alleging that Wm. C. Byrne was lawful father and natural guardian of Edward, and praying that suit should abate as not properly brought.

2d. A demurrer.

3d. The answer admitted the title of Edward to the property ; admitted he was the son of Wm. C. and Ann C. Byrne, and admitted their marriage ; alleged their ignorance of any marriage with Jane Heatherington, and required strict proof of it, and prayed to be allowed to disprove it; admitted Wm. C. Byrne's residence beyond the limits of the State, but denied his insolvency, and denied that he had made no provision for Edward, or had no means to support him, or had abandoned him. They allege that prior to January, 1850, Wm. C. Byrne being in possession of and exercising control over the property, as well as of his son Edward, the defendant Smith rented the property from him for three years from 1st of January, 1850, at $300 a year, (its full yearly value,) $50 a year to be expended in repairs and improvements on the property, and the remaining $250 to be paid over to the defendant Love for the use and benefit of Edward, according to an arrangement between said Byrne and Love. They admit Smith's possession of the property since that time, and allege that he has placed $150 in improvements on the property and paid said Love the remainder. They allege that the property sued for was purchased by said Wm. C. Byrne of said Love with the funds of said Byrne, and that in order to make a provision for Edward, against the accidents of mercantile business, he caused said Love to convey the property to said Edward ; that the property was thus a gift from Wm. C. B. to his son Edward, and that he was the lawful father of Edward. They further allege a divorce for adultery and other causes on the part of Ann C. Byrne be-

tween her and her husband Wm. C. Byrne, and plead the de-
cree. They further allege that in the latter part of 1849 said
Wm. C. B. determined to remove to California, to better his
fortunes; that he then had sole charge and control of Edward
and his property, as natural guardian, and was in receipt of its
rents and profits, and without any dispute or contest as to the
guardianship of Edward; that in order to provide for the ed-
ucation and rearing of Edward, which he believed could be
better done in this country than in California, he requested
said Love to take charge of Edward, make him a member of
his family, provide for and educate him till he became 21 years
of age, take possession of said property belonging to Edward,
and receive its rents and profits in order to provide the means
therefor, and deliver the property up to said Edward when he be-
came 21 years of age; that said Love consented to this, after the
repeated solicitations of said Wm. C. B., believing the interests
of Edward would be thereby promoted. Reference is then
made to an article of agreement to provide for the above ob-
jects, executed between said Wm. C. B. and Love, January 1st,
1850, which is made part of the answer, and they allege that
thereby Love became entitled to the possession and control of
said Eward, and bound to provide for his education and main-
tenance, and also entitled to the possession, rents and profits of
said property, subject to the agreement of rent to said Smith;
that its yearly value is about $300,—not more than enough to
provide for and educate him in the manner desired by his
father, and intended by said Love; that said Love had re-
ceived the charge of Edward, made him a member of his fam-
ily, placed him at a suitable school, and in all respects provided
for him in the same manner as the son of said Love, a few years
older, and that he had in all things performed. the obligations
of said agreement; but that not long after the said Ann C.
Byrne had unlawfully and fraudulently obtained possession of
said Edward, and clandestinely conveyed him away from Gal-
veston, and has ever since secretly and forcibly detained him
and refused to return him; that said Love has made every ex-

ertion in his power to recover him, but has been prevented by the acts of said Ann; that he fully intends to recover him and in all things to perform the covenants of his agreement. Love prays that Ann C. Byrne be made a party, and that on the hearing she be decreed to return the said Edward to him in Galveston by a day to be fixed by the Court, or in default that she be attached for a contempt and compelled by fine and imprisonment to obey its decree. Love further charges that the character of said Ann for want of chastity and virtue is such that she should not be permitted under any circumstances to have charge either of his person or his property, and prays that in the event said Edward be entitled to any judgment in this suit, the same be secured from going into her hands or subject to her control. The defendants specially deny that they had any notice that Wm. C. Byrne was not the natural guardian and authorized to control the property of which he held possession.

The plaintiff demurred to the plea in abatement, but the demurrer was overruled by the Court; but on the hearing of the plea, defendants were ordered to answer further. The matters of law and fact were all submitted to the Court, waiving a jury, and the Court dissolved the injunction and dismissed the petition, and because it appeared that Wm. C. Byrne, the lawful father and natural guardian of Edward, had placed the said Edward and the property in controversy in the possession and control of said Love, and the said property was derived by said Edward from his father, it was decreed that said Love's right to the possession and control of said Edward and the property be confirmed, and that said Love should within ten days file with the Clerk of the Court a bond with approved security, in the sum of $6000, to the Chief Justice of Galveston County and his successors in office, conditioned for the performance of his obligations in the agreement between said Wm. C. B. and himself, and that said Love should not receive the rents and profits or in any manner interfere with said property until said bond was executed; and that said Love should re-

Byrne v. Love.

port whenever required by the Chief Justice, in accordance with the provisions of the law respecting guardians ; and that said Ann C. Byrne should restore said Edward to said Love within two months after the rendition of the decree and execution of the bond, on pain of being proceeded against for contempt.

The deed from Byrne to Love stipulated that whereas it was estimated that the rents of the property would not exceed the necessary expenses of the child's maintenance and education the said Love should not be required to account either to the said Wm. C. or to the said Edward.

*P. McGreal* and *W. G. Hale*, for appellant. The deed of bargain and sale of the property of the infant plaintiff, made by his father to Love, until the plaintiff arrives at 21 years is void. (2 Wilson, R. 129, 135 ; 1 Nott & McCord, 369 ; Hardwick's R. 183 ; 9 Yerger's R. 463.)

The Statute gives the custody of the minor children, their education and estates, to the lawful father while living ; but this is a personal trust, which the father cannot sell, transfer or assign.

*W. P. Ballinger*, for appellees. Byrne being the lawful father and natural guardian of Edward, and having given him the premises, I maintain that he was lawfully entitled to their custody, control and administration during Edward's minority, and could lawfully "place them in the possession and control" of Love.

Authorities have been cited to prove that the father as natural guardian possessed no such authority by the Common Law, but his authority was confined solely to the person of his child. These authorities are inapplicable. The right of the father is not claimed, by the Common Law, but by the Statute. The Statute expressly gives to the father "custody" of the estates of his children, without giving bond and security, taking the oath, or returning an inventory, unless the estate has been

given to the child by some other person than the parent.    Most undeniably, this estate was not given to Edward by Love. The Statute seems to contemplate just this case, a purchase by the father from a third person and conveyance to the child; and it recognizes the right of the father where it is in substance a gift from him, or is not the gift of another.

The law, then, gives to the father the right to hold, manage and administer this property, and trusts that management to his affection and discretion, without requiring him to be subject to the supervision and orders of the County Court, or to make any report to the County Court, or settlement with it.    I do not contend that the act of the father in making a lease or transfer of the premises during the child's minority may not be enquired into ; and if the intention of the parties was fraudulent, or if there be such gross improvidence as is calculated to do great injury to the interest of the child, I readily admit that a Court would declare his contract or agreement void.

But his general authority to hold, manage, lease or dispose of the property during minority is unquestionable, and the enquiry will always be, was the transaction in good faith and without fraud, and further was it an act of gross improvidence as to the interests of the child ?

But it is contended by plaintiff's counsel that the agreement (evidently drawn under the impression by the draughtsman that the title was in Wm. C. Byrne) purports to be a sale and cannot be construed into anything else, and that a sale would have been void.    Every conveyance of an interest in property is in some sense a sale of that interest ; but this instrument is evidently intended to convey only the possession and use of the property during Edward's minority.    It is not a sale of the property itself.

By the well known principle of construction and equity, if Byrne had purported to convey a greater interest than he could lawfully convey, it would have operated as a conveyance of such interest as he could transfer.    (Law v. Hempstead, 10 Conn. 23 ; Martin v. Sterling, 1 Root, 210 ; U. S. Dig. "Deed" 704.)

Byrne v. Love.

I have no hesitation in my reliance that the Court will hold that there is nothing in that agreement which it believes fraudulent or improvident, or not within the power of Wm. C. Byrne to contract.

If at any future time the annual value of the property should be greatly increased, or if Love, instead of applying the proceeds to his thorough education, (which would not be completed until he was about 21,) should at an early age put Edward to maintaining himself, and not aid him with the proceeds of the property, then, the arrangement may become improvident, or rather will be violated, and will be within the control of the Chancellor.

HEMPHILL, CH. J.   We will first consider whether Wm. C. Byrne, on the supposition that he is the lawful father of the plaintiff, could make such transfer of the guardianship of the person and property of the plaintiff as that contemplated in the deed from the said Byrne to James Love, one of the defendants.

The transfer was evidently under a misapprehension that the title of the property was in Byrne, the grantor, and not in the plaintiff; but this is not very material, as in equity it would be regarded as effectual to convey whatever interest or control the grantor had over the property; and in considering the power of Wm. C. Byrne to make this transfer, we will regard the transaction in the aspect most favorable to its validity, viz: on the supposition that the property which the plaintiff now claims was originally derived to him by gift from his father, the said Wm. C. Byrne, and that the consideration of purchase of the said property was advanced from the funds of the father, and not from those of the plaintiff.

Such being the fact, the father, as natural guardian, was by the Statute exempted from giving bond and security, and from returning an inventory of the property.   But with this provision in his favor, was he authorized to assign the custody of the person, and absolute control over the property of the plain-

tiff until the latter arrived at twenty-one years of age, with an express exemption of the assignee from accountability for the proceeds of the property to any person or authority whatever?

In our investigation into the extent of the authority of the parent as natural guardian of his minor child, under the Statute of 1848, we cannot derive much aid from the doctrines of the Common Law on the subject of guardians by nature, from the fact that at Common Law such guardianship extended only to the person, whereas under the Statute it extends also to the estate of the ward, and therefore in its extent it more nearly resembles guardianship in socage and that by will under the Statute of the 12 Charles II., than the guardianship by nature as known to the Common Law.

But none of these guardianships, whether by nature, in socage, or by will, were assignable. Chambers, in his treatise on Infants, (p. 56,) states that this guardianship, viz: the one by nature, is not assignable; and that no guardianship, except that formerly in chivalry, is assignable; and for this he cites Villa Real v. Mellish, (2 Swanton, 536,) which fully sustains the doctrine. (Reynolds v. Lady Tyneham, 9 Mod. 40; 4 Bro. P. C. 302; Vaughan 177.) Guardianship in socage, unlike that of nature, at Common Law extended not only to the person, but also to the estate of the ward, and although it may be said not to exist in this State, there being no lands held in socage, and it being almost impossible that there could be next of kin who could not properly inherit, yet as it bears a striking resemblance to the guardianship by nature, in the extent of its authority, we may examine into the question of its assignability; and we find that such guardianship was deemed a personal trust, not transmissible by succession and not devisable or assignable. (2 Kent, 223; Chambers, 59.) The reason given by Chambers, why such guardianship was not assignable is, that the interest of such guardianship was wholly for the infant's benefit and not for the guardian's profit, and that the ancient authorities which seem to have held the contrary doctrine, were answered by the decisions of later times, referring

to Co. Litt. 88, Bn. ; Plowden, 273 ; Tomlin, Dict. Guardian.)

Guardianship by will extends to both person and property, but being also a personal trust is not assignable by deed, will or otherwise. (Chambers, p. 65 ; Eyre v. The Countess of Shaftesbury, 2 P. Wms. 103 ; Gibb, Equity R. 172 ; White & Tudor's Leading Cases, Vol. 2, pt. 2, p. 114.)

The guardianship by chivalry was assignable, either by deed or parol, and vested, on the death of the guardian, in his executors, because such guardianship was more for the benefit of the guardian than for the profit of the ward, the infant not being entitled to an account for the profits of his land, which were taken by the guardian for his own emolument, subject to a bare maintenance for the infant. (3 Bac. 402, 403.)

If the deed in this case was a mere appointment, under the usual responsibility, of the defendant Love as a substitute for the father in his office of guardianship, it would seem that in reason there could be no insurmountable objection to such act, whatever there may be in law. The father, perhaps at Common Law, and certainly under the Statute of the 12 Charles II., and under our Statutes of 1840 and of 1848, can by will appoint a guardian for his minor child. (Hart. Dig. Art. 1572.) And here I may remark that under the Act of 1840, the surviving mother was also authorized to appoint such guardian. The omission of the mother in the Act of 1848 was perhaps unintentional. If not, it was a step backward, towards the rigor of the Common Law, under which mothers, as a general rule, could have but little property, and her exclusion from the appointment of a guardian would be comparatively but a slight increase of the hardships incident to that code, on the rights of married women.

But passing by this anomaly in our system on marital rights, and recurring to the power of the father in the nomination of guardians, it would seem that though there might be some reason in the position that as he has the power of appointment by will, so he should have it by deed which would operate in his life time, yet it appears that no such power is vested in him by law.

Under the Act of 1848, no express authority is given the father to constitute a guardian by deed, and though such power was vested by the Statute of Charles II., yet the deed was testamentary in its nature, and the deed under the Act of eighteen hundred and forty would probably be so considered. But if the Statute of Charles was in force in this State, and if the Act of 1840 was not repealed, and if the deed mentioned in those Statutes was not testamentary, but operative before the death of the grantor, yet the instrument in this case contains provisions and conditions which are incompatible with law; and if the father had the enlarged powers which we have supposed, yet the condition of exemption from account would not be within the scope of such powers; and if the grant existed at all, it would be not on the terms agreed upon by the parties, but on other conditions, which would be attached to it by law.

As said before, there was a misapprehension at the drawing of this deed, in this, that the property was supposed to belong to Byrne, the father, whereas in fact it had previously vested in the plaintiff. Had the property been in the father, although he might not have had the power to assign away during nonage the entire custody of the person of his child, yet he might have vested the property in the defendant as trustee, with an express exemption from account; and this would have been valid, although so tender is the regard of the Court for the rights of infants, that in a case where property was to be applied at discretion to the education of a son, without liability to account, yet it was held so far subject to the control of the Court, as to authorize it to prescribe the amount which it deemed fit for the son's education. (Chambers, 692; Jac. 354.)

But this being the property of the son, the father had no power to transfer it to a trustee, so as to bar the infant from an account. It is true, that on the supposition of the original derivation of the property by gift from the father, he was not compelled in his capacity as natural guardian, to give bond; but this does not exempt him from liability to account. He might not and would not be held to a strict return of his acts

in relation to such estate. The Court would be satisfied with any reasonably fair administration of the property thus derived; but still an exemption from bond, security or inventory is not identical with or equivalent to an exemption from accounting. The exemption of a trustee or guardian from the obligation to account for the rents and profits, is generally held to be equivalent in law to a gift of them to the trustee for his own emolument. (Chambers, 692.) Where such a consequence as this is intended, either by Statute or by deed, it should be expressed in unequivocal terms. It cannot be implied by a mere exemption from bond and security.

If the father himself be liable to account, most clearly his assignee cannot be exempted from such liability. The guardian appointed by his last will can claim no such exemption, either on general principles or by the Statute, for this expressly requires him to give bond and security. And if the father cannot relieve a guardian whom he has authority by will to appoint, from such liability, most clearly he can confer no such exemption on his appointee by deed, an appointment which seems to have no foundation or authority in law. Chambers in his treatise on infants says, that guardians, executors, trustees, and their representatives if dead, and all persons who stand in a confidential relation towards infants, are liable to account to them by means of the Courts, for their management of the property.

Liability to account is so necessary a consequence of guardianship, that a guardian cannot do any act for which he can render no account. The same author continues: "It does "not seem possible that, in any way, any guardian, trustee, ex- "ecutor, or other person acting in such capacity, on behalf of "infants, can be exempted from the jurisdiction of the Court, "in this respect, except by express words which are construed "to mean a gift to the trustee." (Chambers, p. 604, 605.)

There is no doubt a guardian, and especially a father acting as guardian by nature, has very ample authority in the control, management, rearing and education of his children; that he

may lease their lands until his death or until they arrive at the age of majority ; that he may place them for years under the superintendence and control of others, and where such act is not so injurious to the infant as to require the interposition of the Court, it cannot be disputed, either by the infant or by others. All this he may do in perfect consistency with his right of guardianship, and his ultimate liability for the proceeds of the minor's property. But this is very different from an absolute transfer of his right of guardianship, and all control over the person and estate of the minor. This, as we have seen, is contrary to law, and in the language of the Court in Villa Real v. Mellish, (2 Swanston,) such deed passes no right, but it still remains in the grantor. The deed in this case places the minor in the possession, charge, guardianship and control of the defendant Love, who is to have the entire and exclusive possession, charge, guardianship and control of the said Edward, without any right or authority in any other person or authority to interfere with, approve, prevent or modify the will, action and management of the said Love, according to his own judgment and discretion, and the said possession and control of the said Edward are to continue until the minor arrives at the age of twenty-one years. This is a transfer of the custody of the person without any reservation, and the transfer of the profits and proceeds of the property is equally absolute, the defendant being authorized to receive them without accounting or being responsible for the same at any time hereafter to the said William C. Byrne or the said Edward or to any other person or authority therefor, the intention of the parties being that the use of the said property and its proceeds were to compensate the defendant Love for his maintenance and education of the plaintiff, and the proceeds of the premises were to be taken by the said Love absolutely, without being subject to any future liability or account for the same or any part thereof. This is a complete assignment and renunciation of guardianship of both the person and property, and it is therefore obnoxious to and void under the law.

There are cases in which the father or other guardian, as well by his acts as by his words, may renounce his guardianship; but these are where the infant or the parent receives some benefit by such renunciation in favor of another. Thus, where testators or other doners have bequeathed or given property to infants on condition, expressed or implied, that they should be under the management and control of persons different from their legitimate and natural guardians. If, in such case, the father or other guardian has expressly or impliedly acted on such will or gift, the Court will appoint those guardians whom the donor has pointed out, and the father or other guardian cannot at a future time disturb an arrangement beneficial to the infant. (Ambler, 303; Jacob, 255; 1 Bacon, 540; Chambers, 44, 45, 180–1–2–3.)

This case is however very different from those in which such renunciation has been made effectual against the legitimate guardian. What might be the effect of this deed on Wm. C. Byrne, the father, if he were claiming to have it set aside, it is not necessary to discuss. In the case of Villa Real v. Mellish, (2 Swanston, 533,) both the mother and the infants petitioned that she should be restored to the guardianship. The Chancellor refused to set the deed or assignment aside on the petition of the mother, but did so on that of the infants. But in this case the infant is the complainant, and it is his rights, as against the deed, which are before us for decision.

Upon the whole we are of opinion that the deed from Wm. C. Byrne, the father, to James Love, the defendant, is void, and that the said defendant can claim no right under the same.

But although the act of these parties was not in conformity with law, they cannot be charged with any intentional wrong on the rights of the plaintiff. Whatever may be the faults or misfortunes of Wm. C. Byrne, he cannot be charged with the want of parental affection. This is abundantly manifested, and it was under its influence, doubtless, that he proposed this arrangement, as the one which would best protect and promote the interests of his child, whom circumstances almost forced

him to abandon, and as one which would most effectually secure his being brought up under salutary influences, and with a due education in literature, morals and religion; and there is as little doubt that Col. Love was actuated by generous feelings and honorable impulses, in accepting, after urgent solicitations, this guardianship of the plaintiff. The fact of his receiving the property without liability to account cannot subject him to any imputation. The duties of the trust, in the rearing, maintenance and education of the minor, were both onerous and responsible, and the proceeds of the property did not exceed the amount necessary for these purposes, at least the excess was very inconsiderable, and the defendant as a man of careless business habits, and one who from the evidence would not be likely to make the most out of the property, might be unwilling and very properly refuse to take upon himself the administration of the property in question on the principles of a strict account for receipts and expenditures, suspended perhaps over his head for fifteen or sixteen years, with liability to loss of vouchers and to rejection of charges and expenditures as unnecessary or injudicious. He might be very unwilling to expose himself to the inconveniences, danger and risk from such a trust. But induced by the appeals of a father placed under the peculiar circumstances of Mr. Byrne, he might yield his consent to receive the son into his family, act in the place of his father, and for all the expenses incident to the protection, rearing, clothing and education of his son, agree to take the proceeds of this property by way of compensation, the chances being that the profits under his management would not exceed a fair allowance for his services and expenditures, while there was quite a probability that they might be much less than a fair allowance.

The arrangement between the parties is not valid in law, but is quite consistent with the finest feelings and the most honorable motives in both parties.

I have considered the main question in this cause in the aspect most favorable to the defendant and to his rights under

the father, Wm. C. Byrne. The opinion has proceeded on the assumption that Byrne was the lawful father, that the property was derived from him and not purchased by funds of the plaintiff, and it has been seen that even under these circumstances the deed cannot be sustained. It will therefore not be necessary to examine particularly whether Byrne was the lawful father or not; that is whether the fact of his marriage with Jane Heartherington previous to that with Ann C. Byrne, the mother of plaintiff, was sufficiently proven, nor whether the property was in fact derived from him, and if so whether it was from his own or the funds of the community. I am inclined to the opinion, however, that the evidence introduced, without the aid of that which was excluded, though raising a strong suspicion, was scarcely sufficient proof of the prior marriage. But whether previously married or not, the fact of his being father of the plaintiff is unquestionable. If the plaintiff were wholly illegitimate, that is begotten out of matrimony, that would not of necessity give the guardianship to the mother. After such a child attains the age of seven years, the father has an equal claim with the mother to the guardianship; and where the fact is that the property of the child is derived from the father, that would turn the scale in his favor, unless counterbalanced by objections of sufficient weight to the contrary. Where under the Spanish Law, in a putative matrimony, the wife at the time of her marriage was ignorant of a prior marriage on the part of her husband, she would have claim superior to the husband. In fact, under that law, his natural and paternal rights under such circumstances are almost wholly disregarded. I allude to this provision, as some reference had been made to it in the argument of counsel.

If by the decree in this case, the District Court would be required to proceed to the appointment of a guardian for the plaintiff, we would discuss some of these questions at some length, and give some instructions regulating the action of the Court in the appointment of such guardian, and particularly the circumstances under which a Court of Equity would inter-

fere and supersede even a legitimate father or mother, in their office of guardian, when this might be necessary for the protection of the infant or for his proper education in sound morals and religion, so as to make him a useful member, and prevent him from becoming a nuisance to the community.

But these considerations will be left in the first place to the discretion of the County Court, when the subject of an appointment of guardian for the plaintiff is brought before that tribunal.

It is ordered, adjudged and decreed that the judgment of the District Court be reversed, and it is further ordered, adjudged and decreed that the deed between William Cummins Byrne. of the one part, and James Love of the other part, bearing date the thirtieth day of January, one thousand eight hundred and fifty, as found in the record in this case be, and the same is hereby declared to be wholly null and void, and that the same be and is hereby set aside and declared to be of no effect, and that the appellant do recover of and from the said appellees the lot or parcel of land in his petition described, together with the improvements thereon, and his damages and mesne profits to be assessed by a jury to be called for that purpose, in the said District Court; under such assessmant, a just and liberal allowance is to be made to said Love for any expenses incurred in the care and trouble bestowed by him in the education and support of said appellant; and that a judgment in accordance herewith be entered in said District Court after such assessment, and execution and a writ of possession issue from such Court accordingly. And it is further ordered, adjudged and decreed that the said cause proceed in the said District Court in the name of the said appellant, by his said next friend until the appointment of a proper guardian for said appellant by the Probate Court having jurisdiction thereof, and that such guardian when appointed may appear and continue to prosecute said cause in the name of said appellant; that a proper person be appointed as receiver by the said District Court, who shall receive and take into his possession the premises in question,

and shall also receive all the damages and mense profits re-covered, and all rents accrued or accruing from the said lot of land and improvements during the pendency of the said case, to be kept, managed and paid out under the order of said District Court, for the support and education of said appellant, such receiver first entering into proper bonds for the performance of the duties of his office ; and that on the termination of said cause and the appointment of a guardian for said appellant by the Probate Court, such guardian shall receive from said receiver the balance in his hands, and shall also receive all monies accrued or accruing from the rent of said lot of land and improvements, until he may be discharged by said Probate Court, to be kept, managed and paid out under the orders of such Probate Court for the support and education of said appellant as may be necessary ; the said guardian entering into proper bonds, and accounting to said Probate Court when required.    And it is further ordered, adjudged and decreed that the said appellant by his next friend aforesaid, recover from the said appelles his costs in this cause incurred.

It is ordered, adjudged and decreed that the judgment of the District Court be reversed and the cause remanded for further proceedings in accordance with the opinion of the Court.

Reversed and remanded.