## YOUNG *v.* THE STATE, EX REL. CONVERSE.

BASTARDY.—*Support of Child by Another than the Mother.*—Where the mother of a bastard child, by a legal and proper arrangement with a third person, which has gone into operation, has become released from her obligation to support said child, and has ceased to support it, she has no right to call further upon the putative father to aid in its support. And where a third person supports such child, not as discharging a duty of the mother on her neglect to discharge it,' or as an act of humanity simply, but under a contract voluntarily made upon a consideration, such third person is not entitled to receive, in addition, statutory compensation for supporting such child as a bastard.

SAME.—*Judgment Where Child has been Apprenticed.*—The mother of a bastard child, by deed duly executed, relinquished said child, until it should arrive at the age of eighteen years, to a certain orphan asylum, in consideration that said asylum would support and furnish a home for the child until it should reach that age, empowering said asylum, if it should see fit to do so, to cause said child to be adopted by some suitable person, or bound out till of age to such a person. Afterwards, and within two years from the birth of the child, the mother commenced a prosecution for bastardy against the putative father; pending which prosecution, said asylum, pursuant to said deed, by an article of indenture, apprenticed said child to a stranger, who under said article took and retained the child, whose maintenance and education, in consideration of its services, were secured by said article, until it should arrive at the age of eighteen years. Upon a verdict that the defendant in said prosecution was the father of said child, the court rendered judgment that the defendant pay for the support of the child a certain sum in instalments, etc., making the instalments payable to the person to whom the child had been apprenticed, to be used by him in the support, etc., of the child.

*Held*, that the judgment was erroneous; that the court should not have adjudged the payment of any sum to the person to whom the child was apprenticed, but should have merely awarded a just compensation to the mother for the time during which she supported the child before she relinquished it to said asylum.

From the Marion Civil Circuit Court.

*J. C. Green, J. C. Pearson* and *J. S. Campbell*, for appellant.

*J. K. Jones*, for appellee.

PERKINS, J.—Prosecution against Young for bastardy. Prosecution sustained in the court below. Appeal to this

court.   A bill of exceptions purports to contain all the evidence given on the trial of the cause.

Mary E. Converse, the relatrix, was the mother of the bastard child.   It was born on the 11th day of October, 1874.   Mary was a poor girl, and for a year and four months had supported herself and child by washing; when, on the 7th of February, 1876, in consideration that the Indianapolis Orphan Asylum, of Marion county, Indiana, would support and furnish a home for her said child, till it became of the age of eighteen years, she, by deed duly executed, relinquished it to that institution till it should arrive at the age mentioned, empowering said asylum, in the deed, if it should see fit so to do, to cause said child to be adopted by, or bound out till of age to, some suitable person, etc.

Pursuant to the covenants contained in said deed, and by virtue of the deed itself, the asylum received the custody and possession of the child from the mother, and on the 12th of April following, an article of indenture was entered into by the parties thereto, which we here copy:

"This indenture, made this 12th day of April, 1876, by and between the Indianapolis Orphan Asylum, a corporation existing under and by virtue of the laws of the State of Indiana, and Hannah T. Hadley, as president of the board of directors of the Indianapolis Orphan Asylum, of the county of Marion, and State of Indiana, parties of the first part, and Edward P. M. Kitson, of Indianapolis, county of Marion, State of Indiana, witnesseth, that the said parties of the first part, in consideration of the covenants and agreements of the party of the second part, herein mentioned, have and by these presents do put and bind Lizzie Young Converse, aged one year, October 11th, 1875, who is an orphan child, voluntarily abandoned by her parents, and now an inmate of the asylum of the said Indianapolis Orphan Asylum, situate in the county of Marion, from the date hereof, until she attains the age of eighteen years, unto the said party of the second part; that the said parties of the first part give the said party of the

second part all the rights, power and authority over the said Lizzie Young Converse and her service and custody during said period, which, by the laws of said State, a master has over an indentured apprentice, and which the said parties of the first part, or either of them, can give under and by virtue of the act of incorporation of said corporation (formerly named The Widows and Orphans' Asylum of Indianapolis) and the amendments thereto, subject to the provisions of this indenture; and that the party of the second part, in consideration of the foregoing act and deed of the parties of the first part, covenants and agrees that he will now take the said Lizzie Young Converse, carefully keep and rear her, until she attains the age of eighteen years, and during said period will provide for her in sickness and in health, and supply her with suitable food and clothing; will teach her to read and write the English language, and to know and practice the general rules of arithmetic, 'including the double rule of three inclusive,' and will, if by the said party shall be deemed best, teach her some useful trade or occupation; will instil into her mind principles of morality and good conduct, and when she attains the age of eighteen years, give her five dollars, a good bed and bedding, and two suits of suitable clothing; that he will not assign this indenture or transfer the service or custody of said child; and that for any failure of the party of the second part to perform said agreements and covenants, or any of them, the said president of the board of directors of the said The Indianapolis Orphan Asylum, upon such failure, may, at the option of such president, at any time, assume and take the custody of said child for the remainder of said period; and the said party of the second part, upon the declaration of such option, shall have no right or authority whatever over said child or her service, but shall be liable in damages to the president of said board of directors of said corporation, for the use of said child, for the and every breach of all and singular his agreements herein, collectible without any relief from valuation or

Young *v.* The State, *ex rel.* Converse.

appraisement laws; and that, for the full and true performance of all and singular his covenants and agreements aforesaid, the party of the second part hereby binds himself, his heirs, executors and administrators.

"In witness whereof," etc.

This instrument was duly executed and acknowledged, and under it said Kitson took and still retains said child as a member of his household.

On the 24th of February, 1876, seventeen days after said Mary, the relatrix, had transferred her child to the orphans' asylum, and forty-seven days before that asylum had apprenticed it to Kitson, but within two years from its birth, this prosecution for bastardy, against Young, was commenced.

On the 17th of May, 1876, the jury returned their verdict in the case, that William A. Young was the father of said bastard child. On the 2d day of June, 1876, the court rendered judgment on the verdict, as follows: "That the defendant pay for the support of said bastard child five hundred dollars, in instalments of one hundred dollars each, the first to be paid on the 1st day of July, 1876, and the others annually afterwards; that in default of paying or securing," etc., "the defendant be committed to jail," etc., "that he pay the costs," etc. The judgment proceeds: "And it having been shown to the court, by evidence, that the said bastard child, mentioned in the complaint herein, has been apprenticed by articles of indenture, duly executed, to Edward P. M. Kitson; it is by the court further adjudged, that the said instalments, as they become due, and the same are hereby made payable to said Edward P. M. Kitson, to be used by him in the support, care and maintenance of said child."

No question is made as to the legality of the disposition of the child by the mother and the orphan asylum, and we make none.

We cannot reverse this case upon the weight of evidence as to the paternity of the child, nor for any error of the court in its rulings prior to the judgment for the payment

of the instalments of money for the support of the child. But that that judgment is erroneous, must strike every one at first blush. It gives the mother nothing for supporting the child during the first year and one-third of its existence, and it gives the whole five hundred dollars to Kitson, who is entitled to none of it, because, by the contract, the article of indenture, by virtue of which he took and now holds the child, he is to receive the services of the child when they may be of much value, as compensation for maintaining it during the period of its comparative helplessness.

It may aid us in getting a clearer view of this question, if we consider, for a moment, the powers of a mother of a bastard child. In the mother of such a child are centered all the powers of both the parents of a leg'timate child. She is entitled to its custody, care and government. On her is the burden of its support. She may, or may not, prosecute the putative father, to obtain from him aid in supporting it; but if she do so, this gives the putative father no right to its possession or government. 1 Bl. Com., Sharswood, p. 458, note; 2 Kent Com. 215.

Contracts, then, for support, of apprenticeship, of hiring, etc., which the father of a legitimate child may make, the mother of an illegitimate child may make. When she made her contract, then, with the orphans' asylum, apprenticing, or "putting out" her child to it, till it was eighteen years of age, in consideration that that institution should support it till that time, it was a contract that she was competent to make; and it provided for the support of her child, relieved her entirely of that expense and care, and rendered it unnecessary for her to call on the putative father for further aid in that behalf. It rendered the child self-supporting. This contract enured to the benefit of the putative father, as well as to the mother. In this case, had the child died, both the mother and the putative father would have been freed from its support. And we assert the proposition, that when, by a legal and proper arrangement with a third party, which has

gone into operation, the mother has become released from her obligation to support her bastard child, and has ceased to support it, she has no right to call further upon the putative father to aid in its support. And when a third person, as in this case, supports such child, not as discharging a duty of the mother, on her neglect to discharge it, nor as an act of humanity simply, but under and pursuant to a contract, voluntarily made upon a consideration, such person is not entitled to receive, in addition, statutory compensation for supporting such child as a bastard. This would be compelling the father to make such person a mere gift, to pay for the support of the child, where its support was already provided for.

The statute enacts, 2 Rev. Stat. 1876, p. 659, sec. 15: "Such court shall, on such verdict and judgment, make such order as may seem just, for the securing such maintenance and education to such child, by the annual payment to such mother, or if she be dead, or an improper person to receive the same, to such other person as the court may direct, of such sums of money as may be adjudged proper," etc.

Here, the mother is not dead, and there is no evidence that she was, or is now, an improper person to receive the money. This statutory provision, by its very terms, shows that it applies to cases where the mother is still liable to support the child, to cases where no provision has been made by which, as in this case, both mother and putative father are relieved of its support.

The court should have awarded a just sum to the mother, for the sixteen months she supported the child; and, under the facts appearing in this case, we do not see what further allowance could have been made. But, as change of circumstances may sometimes justify a modification of the judgments in bastardy cases, we reverse the judgment in this cause fixing the amount to be paid for the support of the child, the person to whom it is to be paid, the instalments, etc., but not the judgment that the defendant is the

father of the bastard child, and direct the court below to be governed in the premises by this opinion, leaving it the right to hear further evidence as to the state and condition of all the parties, if deemed advisable so to do.