WILLIAM L. PRATT ET AL., Appellants, *v.* SARAH PRATT
ET AL., Respondents.

### April 16, 1878.

Prior to the revision of 1865, the statute had declared that the issue of all marriages "deemed" null in law should be legitimate, but in the revision of 1865, the word "decreed" was substituted for "deemed" in the statute. *Held*, that this change bastardized no one who was legitimate when the change was made, and a son who had inheritable capacity in 1864, and whose father was then alive, could, upon his father's death subsequent to 1865, be capable of inheriting the estate, though issue of a marriage "deemed," but never "decreed," null in law.

APPEAL from St. Louis Circuit Court.
*Affirmed*.

W. H. POGUE, for appellants, cited: Scribner on Dower, 5, 8; *Lawrence* v. *Miller*, 1 Sandf. 539; *Noel* v. *Ewing*, 9 Ind. 37; *Lucas* v. *Sawyer*, 17 Iowa, 517; *White* v. *White*, 5 Barb. 474; *Vartie* v. *Underwood*, 18 Barb. 561.

GLOVER & SHEPLEY, for respondents, cited: *Lincecum* v. *Lincecum*, 3 Mo. 441; *Buchanan* v. *Harvey*, 35 Mo. 281; *Eubanks* v. *Banks*, 34 Ga. 416; Cooley's Const. Lim. 263, 370.

LEWIS, P. J., delivered the opinion of the court.

Thomas Pratt was married in England, in the year 1821, to defendant Sarah Pratt, by whom he had issue, William Pratt, now deceased, and the defendants Rebecca Stout and Maria Powell. Plaintiffs are the children of William Pratt, deceased. In 1834, Thomas Pratt came alone to the United States, and in 1835 was formally married in New York to Harriet Van Pelt, one of the present defendants, now known as Mrs. Harriet Pratt. She was ignorant, until three years after the ceremony, of the fact that his first wife was still living. The couple moved to Missouri in 1847; and in 1849, a son, the defendant Charles R. Pratt, was born to them. Up to his death, in 1874, Thomas Pratt continually

represented and treated the defendants Harriet and Charles as his wife and son. His last will was probated in St. Louis, Dec. 30, 1874. By this, he devised all his estate to his "beloved wife, Harriet Pratt," for life, with remainder to his son Charles R. Pratt, and appointed Harriet his executrix.

The petition sets forth the foregoing facts, and, averring that the defendant Charles R. Pratt is an illegitimate child, that neither he nor his mother is entitled to any distributive share in the estate, and that decedent must be held to have died intestate as to the persons really entitled to distribution, prays that the alleged last will of Thomas Pratt be declared null and void.

Upon a hearing of the cause, the Circuit Court found that defendant Charles R. Pratt and the other descendants named were lawful descendants and heirs of Thomas Pratt, deceased. The decree proceeds as follows : " And the said court finds that said instrument as proved in the St. Louis Probate Court on the 30th day of December, 1874, was executed by said Thomas Pratt on the 10th day of April, 1872, and is the last will and testament of Thomas Pratt, deceased ; and it appearing by said will that said Charles R. Pratt is named and provided for in said will, and that the said plaintiffs, William L. Pratt and Emma R. Pratt, as the descendants of said William Pratt, and the said defendants Rebecca Stout and said Maria Powell were not named or provided for by the will of said testator, Thomas Pratt, thereupon the said court doth consider, adjudge, and decree, that the said William L. Pratt, Emma R. Pratt, Rebecca Stout, and Maria Powell are each entitled to such proportion of the estate of Thomas Pratt, real and personal, as if he had died intestate, and that the said Thomas Pratt left no other children or descendants of children than is herein designated and adjudged, and that the same ought to be and shall be assigned to them by said Charles R. Pratt and by the St. Louis Probate Court. This decree is made without any

prejudice to the rights of Sarah Pratt and of Harriet Pratt as to dower in said estate of said Thomas Pratt; and the court doth further adjudge, that said plaintiffs do recover of said defendants Harriet Pratt and Charles R. Pratt their costs in this behalf expended." Plaintiffs appealed.

From the year 1825 until 1865, the statutes of Missouri, in successive revisions, declared that "the issue of all marriages deemed null in law" should be legitimate. The printed revision of 1865 substitutes the word "decreed" for the word "deemed," in the same place. Under the first provision, Charles R. Pratt would be a legitimate son, notwithstanding the invalidity of his mother's marriage. Under the second, he would be a bastard, for want of a decree annulling the marriage. The question to be determined is, By which law must his rights be ascertained?

The first statute was in force when Charles was born, and continued so to be for sixteen years afterwards. When Thomas Pratt died, the new provision had become the law of the land. It is argued for the plaintiffs that, as it is competent for the Legislature at any time to alter the law of descents, and as no right of inheritance can accrue until the death of the ancestor, the change in the statute operated prospectively upon the rights of Charles R. Pratt. He could acquire no right until his father's death, and therefore took nothing under the law as it stood at the date of that event.

The argument would be more satisfactory if the statute, in either form, provided that the issue of the defined marriage should, upon the death of the father, be capable of inheriting his estate. There would then be nothing for the law to operate upon until the happening of the death, and the law then in force would necessarily be the law of the case. But a fundamental error lies in treating legitimacy and inheritable capacity as convertible terms. It seems to be forgotten that legitimacy is a *status*, or social condition, and that the capacity to inherit is only one of its incidents.

A legitimate child has, from the moment of its birth until the day of its legal majority, a common-law right to a support from the father. It is entitled to bear his name, even though never acquired by common reputation. If designated in a grant or devise as the child of a named person, who is known as its father, the identification is established and the acquisition made secure. It may inherit, not merely from the father, but from remoter ancestors and from collateral kindred. It may also be inherited from, in an ascending, descending, or collateral direction. These and other incidents are the legal *insignia* of legitimate birth. Bastardy has none of them. The illegitimate son is *filius nullius*. He has no claim to a support from his father, unless by statutory provision. He cannot take his father's name, or any name, except such as may be appropriated through common reputation. He can acquire nothing from a grant or devise in which he is only designated by a reference to his putative father. He cannot inherit, either from his father, or from any remoter ancestor, or from a collateral kinsman. He cannot be inherited from, except by his own descendants. All these several adjuncts or incidents, in either classification, make up the *status* or condition which is called legitimacy, or bastardy, as the case may be. Legislation may modify one or more of the incidents, without disturbing the rest. But when directed at the *status*, it operates upon all of them alike. If an incident be the subject of legislation, it will be governed, according to a universal rule, by the law in force when the incident arises. So also of the *status*. But the incident of inheritance cannot arise until the death of the ancestor, which may be many years after the birth of the child; and during that period the law may undergo numerous changes. The *status*, however, pertains to any and every stage, beginning with the first breath of life. When, therefore, Charles R. Pratt was born, his *status* arose with the law then in force. That law, as both sides here admit, made him a legitimate child.

The question next occurs, Did the change of the statute, in 1865, destroy the *status* which, up to that time, Charles had enjoyed, and substitute its opposite? Plaintiffs insist that, as to his inheritable capacity thereafter, it did so. But, if this be true, every other adjunct of his legitimacy must have suffered the same reverse. For the statute, by its terms, singles out no particular one, but, attacking the *status* itself, carries before it all the adjuncts, without exception. Charles was then sixteen years of age. It results that, from that moment, he lost all claim to parental protection for the ensuing five years of his minority. The name he had been accustomed to bear was no longer his by legal right. He could not demand even a support from the man who had hitherto been bound to maintain him. In a word, all the social privileges in which, with the law's sanction, he had grown up thus far, were destroyed in a single blow by a legislative enactment. It is impossible to suppose that the Legislature intended any thing of the sort.

The common-sense interpretation of a statute which declares that the issue of certain marriages " shall be legitimate " is, that such issue will come into the world with its *status* already defined. A law which proposes to deprive one of the social rights thus defined and vested, must do so in direct terms. In *Lincecum* v. *Lincecum*, 3 Mo. 441, our Supreme Court said : " Where a person is once clearly and positively legitimated, he ought not to be bastardized by implication or construction." Nobody is declared by the statute of 1865 to be a bastard. The declaration is as to who shall be legitimate. It requires an implication, strained beyond the limit of reason, to make this react upon a class whose rights were established by a former law, because they happen now to be omitted. As well might it be concluded that persons born of a valid marriage are bastardized by the same provision, since they are omitted from it quite as completely.

An exact parallel may be suggested in the laws of mar-

riage and dower. Suppose a pair to be married in the form prescribed by an existing statute. The matrimonial *status* is thus established. Afterwards, by a change in the statute, a different form or ceremony is prescribed as indispensable. Still later, the husband dies, and a question arises about the widow's dower. A line of argument similar to that here urged by the plaintiffs would be as follows: As it is competent for the Legislature at any time to alter the law of dower, and as no right of dower can accrue until the death of the husband, the change in the statute operates prospectively upon the rights of the wife. She could acquire no right until her husband's death, and therefore, having never been married according to the law as it stood at the date of that event, takes nothing. The absurdity of the conclusion is more manifest only because of our greater familiarity with matrimony as a *status*, or social condition, than with legitimacy, or bastardy, in the same aspect.

It is suggested on the part of defendants that the word " decreed " was substituted for " deemed," in the revision of 1865, by a clerical error. The internal evidences strongly support the proposition. But its maintenance is not material to the purposes of the present case, and we need not pass upon it.

Plaintiffs object to that part of the decree which directs Charles R. Pratt to act with the Probate Court in making distribution. If there is error in this, the plaintiffs cannot complain. The direction to the Probate Court assures them in all their rights, as properly ascertained in the decree.

The judgment is affirmed. All the judges concur.