## ALLISON v. BRYAN.

Nos. 1421 and 1119. Opinion Filed May 31, 1910.

(109 Pac. 934.)

1. DISMISSAL AND NONSUIT—Grounds — Mistake in Docketing Case. In the absence of a showing of prejudice, a petition filed in the office of the clerk of the district court, the object and purpose of the action being to secure the right of visitation on the part of a parent deprived of the custody of a child, will not be dismissed because entitled in, and by the clerk given, the same docket number as a former case between the same parties, which had been finally closed in that court.

2. PARENT AND CHILD—Custody of Child—Jurisdiction of District Court. The district court is a court of general jurisdiction in which jurisdiction of actions both legal and equitable is vested, and in the exercise of its equity powers it has jurisdiction to entertain, hear, and determine the question of the right of visitation on the part of a parent denied the custody of a child.

3. PLEADING—Reply—Waiver by Defendant. Where a defendant voluntarily goes to trial without a reply being filed to the answer when he is not bound to do so, he is thereby held to have waived it, and is regarded as consenting to go to the proof of the answer, as if it were denied.

4. APPEAL AND ERROR—Briefs—Failure to Urge Error. It is essential that all points upon which counsel rely for a reversal of a cause be made in the brief and properly made; if not so made they are waived. It is not enough to assert in general terms that a ruling of the trial court is wrong; a fair effort must be made to prove that it is wrong, or the point will not be considered as having been made.

5. ADOPTION—Illegitimate Child — Consent of Mother. Under section 4900, Comp. Laws Okla. 1909, the mother of an illegitimate, unmarried minor child is entitled to its custody, service, and earnings, and under section 4919, Id., such child cannot be adopted without her consent, if she be living and has not forfeited her rights therein, and an adoption sought to be made without her consent is not valid as to her, notwithstanding the consent of the father of the child who, acting under section 4931, Id., had previously received the child into his home and in a lawful manner effected its legitimation.

6. PARENT AND CHILD—Contempt—Legitimated Child—Right of Mother to Visit. The mother of an illegitimate, unmarried minor

child which has been legitimated by its father under the provisions of section 4931 of the Compiled Laws of Oklahoma 1909, does not by reason of such legitimation, where same will not conflict with the best interests of the child, forfeit the right to visit the child or to have it visit her, and failure and neglect without sufficient cause on the part of the father to observe a valid order of a court enforcing such right is punishable as a contempt, and in such a case it is no defense that his wife objected or refused to consent to his obedience to the same.

(Syllabus by the Court.)

*Appeals from District Court, Cleveland County; R. McMillan, Judge.*

Consolidated actions by Anna Bryan against Kenner Whittaker Allison, Sr. Judgments for plaintiff, and defendant brings error. Affirmed.

*Milton Brown* and *Flynn, Ames & Chambers,* for plaintiff in error.

*J. B. Dudley* and *Giddings & Giddings,* for defendant in error. Briefs did not reach the reporter.

DUNN, C. J.  Plaintiff in error has appealed to this court two cases in which judgments have been rendered against him in the district court of Cleveland county; as they are closely associated, they have been consolidated and will be considered together. The primary facts out of which they grow are set forth and considered in the case of *Allison v. Bryan,* 21 Okla. 557, 97 Pac. 282, 18 L. R. A. (N. S.) 931, an opinion of this court delivered June 25, 1908, and they will not be reviewed here further than is necessary to state the subsequent acts out of which the controversies in these cases arose.

Under the judgment rendered in the opinion mentioned, exclusive custody of the child involved (a boy of tender years) was taken by Kenner Whittaker Allison, Sr. No provision or arrangement was entered into between him and the child's mother to permit her to visit it, and on August 10, 1909, she filed, as plaintiff, her petition in the district court of Cleveland county, the home of plaintiff in error, in which she charged him, as defendant, with

having had the sole custody of the child since the 1st day of October, 1908, and that she had never had it in her possession since that time, nor had she been permitted to see it or exercise any rights of a mother over it for a period of 11 months. That she had applied to the defendant for permission to see her said child, which was being gradually estranged from her, and that owing to its tender years, she would soon pass from its memory and become unto it as a stranger. That she had a deep affection for her offspring and a longing for permission to see and commune with it, but that unless the court made an order requiring defendant to produce the child and to permit her to visit and enjoy its society, defendant would continue to refuse it. She then prayed the court to make an order requiring defendant to produce the child and to make an order for such temporary custody as might be just and proper. This petition was by the clerk of the district court given the same number as that of the former case above referred to, which likewise arose in that court. Defendant filed a motion to strike the petition from the files for the reason that the former case had been finally concluded by the judgment of this court, and for the further reason that plaintiff was in contempt by having unlawfully kidnapped and removed from the jurisdiction of both courts the child in question, after the rendition of judgment by the Supreme Court, and had taken no steps whatever to exonerate herself from the contempt involved. This motion was by the court overruled.

Thereafter, and on September 21, 1909, an answer was filed in which the defendant admitted that plaintiff was the mother of the child and set up that he had the exclusive custody under the judgment and decree of that court, based on the facts and judgment directed and handed down by the Supreme Court; that the plaintiff was in contempt of both courts of which she had not purged herself, and that the best interests of the child required the exclusive custody and control of the defendant over it, and required that it be not disturbed, and that the court had no jurisdiction to grant the relief prayed for.

A trial was had on this petition and answer without a reply, and the court after hearing the evidence, and considering the same, rendered judgment requiring defendant to produce the said child on the first and third Sundays in each and every month thereafter at the town of Norman, Cleveland county, and deliver the child to its mother for a period of from 9 o'clock a. m. until 3:30 p. m. on each of said Sundays, in order that the said mother might have the privilege of seeing the child alone and in the absence of any other person. It was further provided that said mother should not remove the said child from the town, and in no wise attempt to prejudice the child against its father or his wife. From this judgment, proceedings in error have been duly prosecuted to this court.

After the judgment in the foregoing case had been entered and during the time it was in force, defendant ignored the same, and on the 5th day of October, 1909, plaintiff filed her affidavit in the district court of Cleveland county in which she recited the judgment and that at the appointed time and on the day set, she was present for the purpose of enjoying the society of her child, under the order made, but that the defendant in violation and in contempt of the order of the court failed and refused to produce said child or cause the same to be produced at Norman, but wilfully kept said child away from said town of Norman, and from defendant. Whereupon the court made an order requiring defendant to appear on the 8th day of November, 1909, at the courthouse in Norman and show cause why he should not be punished for contempt for a violation of said order. The defendant for his answer set up that the court had no jurisdiction to make the order dated September 21, 1909, for the several reasons set forth therein. Second, he denied that he had wilfully violated the previous order of the court, because of the fact that circumstances under which he had been situated since it had been rendered made it practically impossible to comply therewith. Thereafter a change of judge was asked for and allowed, and on a hearing the court entered judg-

ment against defendant, assessing a fine in the sum of $1 and the costs of said proceeding.

It is first contended that the court was without jurisdiction to entertain this action for the reason that the petition filed was by the clerk given the same number as the old case which had been finally closed. In the case of *Holt v. Holt*, 23 Okla. 639, 102 Pac. 187, the converse of this proposition was presented; the contention in that case being that the petition should have been filed in the original action but that the clerk, although it was entitled as in the original case, had given it a separate number and filed it as an original case. This court held that this fact would not divest the court of jurisdiction to try the same, although the statute was susceptible to the construction contended for, as there was no prejudice shown to have occurred to the adverse party, and in our judgment the same rule is entirely applicable in the case at bar. We cannot see that had the petition been entitled differently, and filed as an original action, the issue presented would have been different, nor can we see that the trial or the rights of the parties were in any way affected by the fact that it was filed or sought to be filed in the old case, which had been finally terminated. There being no prejudice, there was no error.

The next question which is presented is that the court independent of this fact is without jurisdiction to entertain the case and grant the relief demanded. The action which was here brought, as is noted, was for the purpose of requiring the defendant, who had effected the legitimation of this child (*Allison v. Bryan, supra,*) to permit its natural mother to visit and have access to it. The district court is a court of general jurisdiction in which jurisdiction of actions both legal and equitable is vested, and in the exercise of its equity powers it would have jurisdiction to entertain, hear, and determine the questions presented in this case. It is held in the case of *Rossell v. Rossell,* 64 N. J. Eq. 21, 53 Atl. 821, that:

"Under proceedings invoking the general power of the chancellor over the affairs of infants and their custody during minority,

\* \* \* the chancellor may, by decree or order, award the custody of an infant child of parents living in a state of separation without being divorced, to one of them, and incidentally provide for the access of the other parent to the child under proper restrictions."

The Supreme Court of Arkansas in the case of *State v. Grisby and Wife,* 38 Ark. 406, says:

"The jurisdiction of a court of chancery extends to the care of the person of an infant so far as necessary for his protection and education; and whenever it appears that a father is guilty of gross ill-treatment or cruelty towards his infant children, or that he is in constant habits of drunkenness and blasphemy, or low and gross debauchery, or that he professes atheistical or irreligious principles, or that his domestic relations are such as tend to the corruption and contamination of his children, or that he otherwise acts injuriously to their morals or interest, in every such case a court of chancery will interfere and deprive him of their custody and appoint them a suitable guardian to take care of them and superintend their education; and this jurisdiction is not taken away by the like power conferred by statute on the probate court."

To the same effect see *Bowles v. Dixon,* 32 Ark. 92; *In re Lundergan* (Sup·) 8 N. Y. Supp. 924; *Commonwealth ex rel. v. Strickland,* 27 Pa. Super. Ct. 309; *State, Baird, Prosecutor v. Baird and Torrey,* 21 N. J. Eq. 384.

Nor is it true, as contended, that the failure to reply to the answer in the case admitted the allegations thereof and thereby concluded the plaintiff as to the jurisdiction of the court. The case went to trial and was tried in all respects as if a reply had been filed, and the rule is that where a defendant voluntarily goes to trial without a reply when he is not bound to do so, he is thereby held to have waived it, and is regarded as consenting to go to the proof of the answer, as if it were denied. *Holt v. Holt, supra.*

The defense set up in the motion and answer that plaintiff could not be heard in this action, because of her alleged contempt, is waived by counsel by not insisting thereon and urging it in their brief. It is not claimed that any proceedings have been taken

against her or judgment had therefor, nor is there any argument or citation contained in the brief insisting thereon, and the same, if possessing any merit, is considered waived. The rule in such cases being stated by Judge Elliott, in his work on Appellate Procedure (sections 444, 445), as follows:

"It is essential that all points be made in the brief, and properly made; if not so made they are waived.  *  *  *  It is not enough to assert in general terms that a ruling of the trial court is wrong; a fair effort must be made to prove that it is wrong or the point will not be considered as having been made. Counsel cannot make a point in an appellate tribunal by a naked general assertion, for such an assertion will not be heeded.  *  *  * But, in order to secure so much as notice of the point stated, they must support it by a fair effort, adducing arguments, and, if they can, citing authorities. A bare designation of a ruling as erroneous, without discussion, is not sufficient to entitle counsel to successfully insist that he has made a point."

We now come to the consideration of the merits of the case. To defeat the claim of right in the plaintiff to be permitted to have the right of visitation and to be permitted at reasonable intervals to enjoy the society and to see and be with her child, aside from contending that it was against the best interests of the child, defendant relies upon an alleged adoption which it is contended took place on the 8th day of December, 1905, in the probate court of Cleveland county, wherein the defendant and his wife joined in a decree of adoption, thereby making the said child, in addition to being legitimated, the child of himself and wife by adoption. And it is argued that by reason of the fact that the defendant had legitimated the child, it was no longer illegitimate, and that being its legitimate father by virtue thereof, he had the power and the right to give consent to its adoption by himself and wife. This claim in our judgment cannot be sustained. At common law so long as the mother of an illegitimate child was living, she was entitled to its custody as against all the world. *Inhabitants of Petersham v. Inhabitants of Dana,* 12 Mass. 429; *Young v. State ex rel. Converse,* 53 Ind. 536; *Robalina v. Armstrong,* 15 Barb. (N. Y.) 247; *People v. Mitchell et al.,* 44 Barb. (N. Y.) 245.

The infant was said to be the child of no one and its putative father had no common-law right so long as the mother was living; his right attached only after her death, whereupon he became entitled as against the world to the care and custody of the child. *Pote's Appeal*, 106 Pa. 574, 51 Am. Rep. 540; *Aycock v. Hampton*, 84 Miss. 204, 36 South. 245, 65 L. R. A. 689, 105 Am. St. Rep. 424.

The common-law principles annunciated in the foregoing authorities find expression in our statute, section 4900, Compiled Laws of Oklahoma, 1909, as follows:

"The mother of an illegitimate, unmarried minor is entitled to its custody, services, and earnings."

This is a statutory recognition of the right of the mother in an illegitimate child, as it existed at common law, and which cannot be denied her, except by force of some statute or by a court acting in the interest of the infant. Section 4919, Comp. Laws Okla. 1909, provides:

"A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, except that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery, or cruelty, and for either cause divorced or adjudged to be an habitual drunkard, or who has been judiciously deprived of the custody of the child, on account of cruelty or neglect."

The mother of this child was living at the date of the alleged adoption, and it is not claimed that she gave her consent to the adoption mentioned, nor that she had ever been adjudged guilty of adultery or any of the other grounds contained in the statute. But, as is seen, it is contended, by the circuitous route mentioned and the fact that the legitimation of the child could be accomplished without the consent of the mother, that the child could then be adopted by securing the consent of the legitimating parent, and in this way validate an adoption which could not otherwise be effected.

By adoption, a child in law ceases to be the child of its natural parents; they cease to have any legal rights therein; and it no

longer owes to them any duty. So declares the statute, section 4930, Comp. Laws Okla. 1909, which is as follows:

"The natural parents of a child so adopted shall be deprived by the decree of all legal rights as respects the child, and the child shall be decreed from all obligations of maintenance and obedience as respects such parents."

The statute of legitimation, section 4931, Comp. Laws Okla. 1909, contains no such terms, but provides that the father of an illegitimate child by acknowledging it as his own, etc., and treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed legitimate from the time of its birth. The word "adopts" is used in the sense of "legitimates," and the child is legitimated rather than adopted. *Allison v. Bryan, supra; Blythe v. Ayres,* 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40. The effect of such legitimation on the child is noted in a discussion contained in the case of *Pratt et al. v. Pratt et al.,* 5 Mo. App. 539:

"A legitimate child has, from the moment of its birth until the day of its legal majority, a common-law right to a support from the father. It is entitled to bear his name, even though never acquired by common reputation. If designated in a grant or devise as the child of a named person, who is known as its father, the identification is established and the acquisition made secure. It may inherit, not merely from the father, but from remoter ancestors and from collateral kindred. It may also be inherited from, in an ascending, descending, or collateral direction. These and other incidents are the legal *insignia* of legitimate birth. Bastardy has none of them. The illegitimate son is *filius nullius.* He has no claim to a support from his father, unless by statutory provision. He cannot take his father's name, or any name, except such as may be appropriated through common reputation. He can aquire nothing from a grant or devise in which he is only designated by a reference to his putative father. He cannot inherit, either from his father, or from any remoter ancestor, or from a collateral kinsman. He cannot be inherited from, except by his own descendants. All these several adjuncts or incidents, in either classification, make up the status or condition which is called legitimacy, or bastardy, as the case may be."

Adoption, as we see, cannot be legally made where the parents of a legitimate, or the mother of an illegitimate, child are living, except through and by their consent, and while doubtless all parental rights are yielded in the case of adoption, we have found no foundation for the claim that all rights on the part of the mother of an illegitimate child, consistent with its best interests, are lost in the mere exercise by the father of his right of legitimation. The interests of the child are of first and controlling importance; some mothers of illegitimate children, considering solely their best interests, might be willing to waive all rights of every kind and character which they possessed therein in order to have them adopted and thereby enabled to enjoy the privilege of legitimate persons. Others, seemingly forgetful or indifferent to the best interests of the child, or even taking a different view, might refuse an opportunity of this character, the result of which would be to the child's detriment, and it was to provide for cases of this character that the law in its great interest in the child's welfare, empowered the father to exercise the rights given under the legitimating statute.

But no case has been called to our attention, and a most diligent search has failed to reveal one, which has gone to the extent of holding that the father after having, against the mother's wishes and will, legitimated the child could then further ignore the mother's affection and interest in it, and again act against her consent and effect an adoption with all its legal consequences. It is true that acting under the statute the father has completely legitimated the child; it now enjoys all of the rights and privileges of a legitimate child as mentioned in the case of *Pratt et al. v. Pratt et al., supra,* and "the father of a legitimate unmarried minor child is entitled to its custody, services, and earnings" (section 4899, Comp. Laws Okla. 1909), and the reciprocal rights and duties between the father and the child are the same as those existing between legitimate parents and their legitimate children; still, as to its mother, when her rights are involved, it is an illegiti-

mate child, and the law is that an illegitimate minor child cannot be adopted without the mother's consent, and that which cannot be done directly cannot be done indirectly. Except for the legitimating statute, no one could have disturbed this woman's complete right of custody in and to her child, and in our judgment it would be a strained and unnatural construction of this statute and the rights of the parties under it to yield to the contention of counsel for defendant, for "the law should never receive such a construction as would tend to dry up the sources of natural affection." *Barela v. Roberts*, 34 Tex. 554. If the mother desires to give her consent to adoption, she of course may do so, but she cannot be lawfully stripped of her inherent right to say *no*.

In conjunction with the foregoing we notice the claim of counsel that the father made, executed, and had recorded, a deed of adoption in Kansas City, Mo., in June, 1903. This it is contended was done with the consent of plaintiff, and the claim is made she thereby yielded the right she now asserts. We do not so construe this instrument; that deed was effectual merely to constitute of the infant an heir of his father and to vest in him a right to look to him for support. This is the specific limitation contained in the deed. It contains the proviso:

"With all the right as heir or devisee, and with the same rights as if he had been born to me in lawful wedlock, and with all the privilege and obligation existing between parent and child according to the provision of an act of the General Assembly of the state of Missouri, the same being chapter 90 of the Revised Statutes of Missouri, 1899, and as construed by the decision of the Supreme Court of Missouri in the case of *Foshburg et al. v. Rogers et al.*, reported in the 114th volume of the reports of the said court at page 122, which act and decision expresses the intention of the parties and by which they will be governed."

An inspection of the case referred to verifies the limitation we here place on the instrument as it related solely to the child's right of inheritance. The particular section of the statute under which this deed was executed received a construction at the hands

of the Supreme Court of Missouri in the case of *In the Matter of Chas. B. Clements,* 78 Mo. 352, and of its effect in reference to the rights of the natural parents, the court said:

"The statute in question, it must be confessed, is quite imperfect and very unskillfully drawn, but when carefully considered, we think it will be found to contain enough to effectuate its general purpose. The first section (section 599 [Rev. St. 1879]) is complete and perfect in itself, and authorizes any person to adopt the child of another so as to make him his heir, without the consent of the parents or other person. *Reinders v. Koppelmann,* 68 Mo., loc. cit. 499 [30 Am. Rep. 802]. This the Legislature, having undoubted power to enact a statute of descents, may lawfully authorize to be done. This section, it will be perceived, does not undertake to create or establish the relation of parent and child between the adopter and the adopted, further than to give the child adopted a right of inheritance to the same extent, as if he or she were the child of the adopter. The privilege thereby conferred may be of no pecuniary or other benefit to the recipient, until the death of the adopter. But the third section (section 601) goes further, and gives the child adopted a right during the life of the adopter, to have and receive from him or her, support, maintenance, and proper and humane treatment. The devolution of these parental duties upon the adoptive father necessarily implies that he is to have the custody and control of the child adopted. But as the Legislature has no power to authorize one person, whether acting from motives of charity, benevolence, or caprice, to transfer to himself at his own election, the custody and control of the children of another, it is declared in the last clause of this section that 'this provision,' meaning the whole of the third section, wherein the rights, express or implied, hereinbefore mentioned, are conferred, 'shall not extend to other parties, but is wholly confined to parties executing the deed of adoption.' That is to say, parties who do not join in the deed of adoption shall not be affected by anything contained in the third section; or, to state the matter differently, the natural relations of parent and child, and the rights and duties springing therefrom, are not to be disturbed without the consent of the natural parent."

The mother was not a party to the deed and even had she

consented to its execution, it deprived her of no right she now asserts.

We do not dissent from the law of the cases of *In re Hope,* 19 R. I. 486, 34 Atl. 998, and *Ousset v. Euvrard* (N. J. Ch.) 52 Atl. 1110, relied on by defendant. Each of these cases state the conceded proposition that the custody of the child, either legitimate or illegitimate, where a controversy arises in reference thereto, is granted wherever its best interests and welfare direct. This is virtually all that was passed on in the Hope Case. In the *Ousset v. Euvrard* Case, the mother of certain illegitimate children, by an instrument in writing transferred all of her interest and custody in and to them to their father who, with the consent of his wife, had taken them into his household. He was wealthy and the children had a good home. The mother sought to set aside this instrument and take the children, remove them from the state to a tenement in New York City, where she and her husband lived, both of whom were engaged in gainful occupations for a daily livelihood. The court found specifically that the mother was unfit and the prospective home unsuited for the children, and for this and other reasons refused to set aside the instrument. For sufficient reasons and facts which are made apparent in the case, the mother was denied the custody of the children and also the right to visit them at the home of their father and his wife. The issues presented in that case and in this were likewise in other ways dissimilar, so much so that it can scarcely be considered an authority to a further extent than presenting a recognition of the conceded doctrine that the best interest of the child is the controlling element in all of these cases.

We have made an exhaustive examination of the authorities wherein the question of the right of parents to visit children whose custody had been taken from one or the other or both, and from them, without detailing the facts of each, we cull the following declarations of the rule laid down by the courts on this subject:

"The privilege of visiting accorded to the mother is a plain dictate of humanity, in the absence of any reason to suppose that

the privilege would be abused to the injury of the boy. There was none in this case. The charges of immorality against the mother were not sustained. She is shown to be an industrious, hard-working woman, and a good woman, by all the witnesses, except the defendant. But had it been otherwise the permission to visit would not be necessarily erroneous. The courts should regard the maternal instinct in the veriest trull that walks the streets, taking proper care that it do not lead to the corruption of the offspring. It is the strongest and holiest sentiment of humanity; the freest from selfishness or impurity, and often the last hope of redemption for fallen natures." (*Haley v. Haley*, 44 Ark. 429.)

"Under our statutes, the father is given the right to the custody of his minor children, yet this right is not an absolute legal right, beyond the control of the courts. The cardinal principle in such matters is to regard the benefit of the infant paramount to the claims of either parent. While the courts will not lightly interfere with what may be termed the 'natural rights' of parents, yet the primary object of all courts, at least in America, is to secure the welfare of the child, and not the special claims of one or the other parent. Under the facts of this case, we cannot see that the trial court at all abused its judicial discretion in giving the custody of this infant to its mother, subject to the conditions, however, that she should not remove it from the city, and that the father should have the right to visit it at seasonable hours three times a week, and to take it to his home or for a walk or drive for five hours every Sunday. Of course, all such orders are merely provisional and temporary, and may be changed at any time when conditions change." (*State ex rel. v. Flint*, 63 Minn. 187, 65 N. W. 272.)

"The future welfare and happiness of the child, is entitled to the highest regard, if not the paramount consideration. Her worldly prospects in life are mainly dependant upon her father, and it is not to be disguised that there is great danger from the existing state of things that his natural love and regard for her may by degrees become weakened, and be followed by alienation and estrangement. The daughter is now of a suitable age to be placed at a boarding school, under the especial charge of some lady of character; and while I cannot assent to any plan which will deprive her mother of her care, or of her society, so far as is compatible with her position in a school, yet I am persuaded that a

scheme may be framed upon that position, which will enable her father to visit her with more freedom, and with more advantage to her cherishing due respect and affection for him, than can be afforded in her present situation." (*Ahrenfeldt v. Ahrenfeldt*, 4 Sandf. Ch. [N. Y.] 493.)

"As a matter of strict law, it cannot be denied that in this state, as at common law, the general rule is that the claim of the father to the persons of his infant children is paramount to those of the mother. This rule is so entirely axiomatic that it would be idle to cite authorities in its support. But this rule has only a subordinate application whenever a court of equity is called upon to exercise its authority in that branch of its capacity just referred to. On such an occasion it is not the dry, technical right of the father, but the welfare of the child, which will form the substantial basis of judgment. The legal right of the father will not be passed by, except when, in the opinion of the court, the well-being of the child requires such supercedure. * * * Provision should be made in the decree for the reasonable access of the parents, respectively, to the children, and a privilege should likewise be reserved that either party, in case of any material change of circumstances, should be permitted to come into court for further directions or assistance." (*State, Baird, Pros., v· Baird and Torrey*, 21 N. J. Eq. 384.)

"The general rule is that the father is entitled to the custody of his child; but the chancellor will look to the happiness and comfort of the child, and will confide his custody to the parent whose time and attention can be best devoted to its care and welfare. See *Irwin v. Irwin*, 96 Ky. 318, 28 S. W. 664, 30 S. W. 417, and *McBride v. McBride*, 1 Bush, 15. We are of opinion that the court did not err in awarding the custody of the child to its mother, it being of tender years and in delicate health; but the court erred in not providing in the order that the appellee, the father, should be permitted at reasonable times and places to visit and enjoy its society." (*Barlow v. Barlow* [Ky.] 90 S. W. 216.)

"The enforcement of the *prima facie* right of Mrs. Smith to the custody of her minor children is resisted upon the ground of her unfitness, arising from excessive use of intoxicating drinks. The existence of this deplorable habit at one period of her life is admitted in the traverse by the petitioner of the return of the respondent; but she also asserts that she has reformed this habit,

and that for months before filing this petition she had abstained from the use of liquor; and that she conquered this appetite upon her promise of the respondent that upon effecting this reformation her children would be given her. * * * Mrs. Smith must not, however, be denied access to her children. At reasonable times she must be permitted to visit them, and to have them to herself on such occasions if she desires it. It is right that her offspring should be taught to love their mother, and it depends upon herself whether the legal right to which I have referred shall at a future day be granted to her." (*Commonwealth ex rel. v. Smith,* 1 Brewst. [Pa.] 547.)

"Our decision is that for the present at least the child be allowed to remain with the mother. We wish to add however a single monitory remark. The mother should remember that this decision is not necessarily definitive, and that while the custody of the child is confided to her, the father's right has not been forfeited. It will be her duty to respect his right and allow him every proper opportunity to cultivate the affection of the child. Especially will it be her duty to refrain from any attempt to alienate the child from the father, or to instill into her mind any thought or feeling which a daughter ought not to cherish for her father. A failure to observe this monition may be good ground for another application on the part of the petitioner for the custody of his child." (*McKim v. McKim,* 12 R. I. 462, 34 Am. Rep. 694.)

And finally, this court in its former opinion, after holding that the father by virtue of his acts under the legitimating statute was entitled as against the mother or the world to the possession of the child, in consonance with the holding of all the courts, declared:

"We would not have it understood, however, that in thus declaring the law we hold he should not see his mother, be with her, or be permitted to enjoy her society, nor she his. Not at all. Under the judgment rendered in this cause in the lower court provision was made for the father to visit the child, and the successful respondents should not be deaf to those common promptings of humanity which dictate that the child and the mother be granted the utmost possible latitude for social communion consistent with the new duties placed upon all. In case of sickness or accident the mother should be promptly notified, and, if she desires, permitted

to attend, care for, and nurse. The treatment to be accorded the child is that usually accorded legitimate children. Such children are frequently permitted to go from home to visit their friends and kindred, and friends and kindred are frequently permitted to visit them, and this is the treatment that the father, in this instance and in this case, should accord to this child, and which should now establish its relationship toward its mother."

From the foregoing it will be seen that under practically every and all conditions the parent, in some instances the father and in others the mother, while losing the right of custody of their children, have in every instance received at the hands of the court recognition of their right of visitation. It is true the foregoing cases, other than the opinion of this court, present those only in which the question arose between parents of legitimate children, but the underlying reason for the rule was in each instance that the one accorded the right was a parent, and that it was in accord with humanity and right living and the best interests of the child that it should not forget and be estranged. The father of this child has perforce of the law in this state been enabled to take from this mother, against her will, this child and to take to himself its care and custody. We have no doubt of his sincere affection for it, nor do we question that he and his wife desire to retain it in their home, nor do we doubt that when the best interests of the child are taken into consideration that the force and effect of this law and their action under it will result in effecting the best interests of the child. While granting the foregoing, there is no law either written or unwritten which denies to its mother, where it will not conflict with the interest of the child, the right of visitation accorded by the courts to all other parents.

Mrs. Allison is not a necessary party in either of these cases. The child by the act of the father was not made her heir. *Barnes et al. v. Allen et al.,* 25 Ind. 222; *Keith et al v. Ault et al.,* 144 Ind. 626, 43 N. E. 924. Nor did it enter her household as her child. The statute under which it was legitimated would have been rendered in very many instances nugatory and its effectiveness

largely curtailed, if acting under it the child to be legitimated were to take as an heir of the wife of its father, as but few if any wives could be found who would consent to receive into their homes such children when to do so would make them heirs equally with their own children, and in practically all of such cases the wife would refuse to permit its entrance into the family. The legitimation ·of the child under this statute was accomplished by the father, and the wife's sole connection with the transaction was the giving of her consent to its reception into the family, where it might be treated as if it were legitimate. It has been represented to us that Mr. and Mrs. Allison are without other children; that she is possessed of considerable means and has by will made it her heir; also that she entertains toward it a deep and sincere affection, all of which is highly praiseworthy, tending to the child's welfare and happiness, and further justifying its father in his commendable course resulting in its legitimation. The defense tendered by Mr. Allison in the contempt proceeding is that Mrs. Allison refused to permit him to comply with the order of the court; this cannot be allowed him as his wife has no legal right to the custody and control of the child. If the best interests of the child require it, or the father contumaciously bids defiance to its orders, there is full authority in the court to take it from their household and place it with the mother or elsewhere, and if the mother's deportment is such that by permitting her to visit with the child it would be detrimental to its best interests, then this privilege may be denied her, so that the relationship of both parties to this controversy toward this child depends upon their conduct.

We desire just here to drop this word of admonition to both parties. This child is entitled to the affection of both its father and its mother, and they likewise are entitled to the affection of the child, and it is the positive, affirmative duty of each, abiding constantly with them, to say nothing to cause it to think ill of the other, nor should they permit others in its presence to harshly criticise the absent one.

There is no evidence in this record to justify us in finding that detriment would come to the child by permitting its mother to see it for the brief period granted in the order of the court, twice each month. If a change of situation occurs justifying a change in any of its terms, the power still remains with the court on application to modify it in any particular, but neither party has a right to violate it. The happiness which has come to Mr. and Mrs. Allison in the companionship of this little child ought to cause them to reflect most seriously upon the situation in which their privilege places its unfortunate mother, and this thought should cause them to turn a tender side to the one who has lost all, and more than that which they have gained, and they should ungrudgingly grant and permit her the small measure of happiness which she can secure by the brief opportunities afforded by this order to see her offspring. The status of this child has once more had the careful, painstaking consideration of this court, and in affirming the judgments now before us it is with the hope that it will put a finality to the controversy.

The judgment of the trial court in both cases is accordingly affirmed.

All the Justices concur.