### JUAN BARELA v. EMMA ROBERTS.

1. On the death of the mother of an illegitimate child, the putative father is entitled to the guardianship. This right is impliedly recognized by the statute of this State, article 3884, Paschal's Digest.

2. The law should never receive such a construction as would tend to dry up the sources of natural affection. A child, though illegitimate, should not be denied all claim to the protection and love of its father; nor should the father be denied the privilege of assuming voluntarily his parental duties and responsibilities.

APPEAL from Matagorda.   Heard below by the Hon. W. H. Burkhart.

The facts are clearly stated in the opinion of the court.

*Henry Thorp*, for the appellant.

*D. E. E. Braman*, for the appellee.—The Supreme Court is respectfully referred, on behalf of the contestant, to the following authorities :

See Paschal's Annotated Digest, article 3427 :  It seems, by our laws, that marriage by the parents of bastards legitimizes such children, and this is the only mode by which the father, by reason of his relationship, can acquire control over his illegitimate offspring.   But, in the case at bar, Barela, the applicant, being a married man, could not acquire this kind of legal control over the minor.   To her he is in every respect a stranger, and must so remain.

The common law designates bastards "*filius nullius*," and their situation under our law is the same as to their paternity.

Also, Paschal, article 3428, which shows that our statute law does not recognize that the father of a bastard has any legal control or rightful authority over his illegitimate child.

The law casts the reputed father under no civil disability, obligation, fine or mulct, on account of his begetting a child by illicit intercourse with a woman; neither does it give him any legal right, advantage or authority over the unfortunate mother or her disgraced offspring.   (Also, see Paschal, article 3428.)

If the law metes out no punishment it offers no reward for illicit intercourse; it leaves the unclean thing to be eradicated by the high moral tone of society.

The law provides no mode by which Barela can even be allowed to prove that he is the father of the bastard Milly.

Emma Roberts, the contestant, and sister to the minor Milly, is entitled to the guardianship of Milly's person, in preference to

---
---

Barela. (See pamphlet ed. Laws of Twelfth Legislature, 1870, 185, § 319.)

EVANS, P. J.—Juan Barela made application in the District Court of Matagorda county for letters of guardianship of the person of Milly Barela.

The petitioner avers that the said Milly is the illegitimate child of himself and one Mary Jamison, now deceased, and that she is about six years af age; that he supported the said mother and child from its birth until the death of its mother, who departed this life some time during the year 1869; that the mother, on her deathbed, entrusted the child to his care and custody; and that the mother died without property of any kind, and left her child entirely destitute.

The application was resisted by Emma Roberts—alleging that she is the half-sister of the said Milly, and praying for letters of guardianship.

Upon the hearing, the court below decided against the application of Juan Barela, and awarded letters of guardianship to Emma Roberts.

From this judgment the applicant appealed to this court.

There seems to have been no objection made in the court below to the competency or fitness of Barela to discharge the duties of guardian; and we can only infer, that the court decided adversely to him upon the ground that his paternity gave him no claim to the care and custody of his child.

In the case of Byrne v. Love, 14 Texas, 95, Chief Justice Hemphill says: "If the plaintiff were wholly illegitimate, that is, begotten out of matrimony, that would not of necessity give the guardianship to the mother. After such a child attains the age of seven years, the father has an equal claim with the mother to the guardianship."

We have not had at our command authorities to verify the cor-

rectness of this opinion ; but as it is in harmony with the prevalent policy of most of the States, and the modern decisions on the subject, we have no doubt of its correctness.

"In all cases not otherwise provided for by law, the father, while living, * * * and when there shall be no *lawful father*, then the mother, if living, shall be entitled to the guardianship of their minor children." (Paschal's Digest, article 3884.) This statute is a recognition, by implication, of the right of the putative father, on the death of the mother, to the guardianship of their illegitimate offspring.

"The putative father has no legal right to the custody of a bastard child, in opposition to the claim of a mother ; * * * she has a right to the custody and control of it against the putative father, and is bound to maintain it as its natural guardian ; though, perhaps, the putative father might assert a right to the custody of the child as against a stranger." (2 Kent, 233.)

Bouvier says, "The putative father is bound to support his children, and is entitled to the guardianship and care of them, in preference to all persons but the mother."

"The relaxation in the laws of so many of the States of the severity of the common law, rests upon the principle that the relation of parent and child, which exists in this unhappy case in all its native and binding force, ought to produce the ordinary legal consequences of that consanguinity." (2 Kent, 231.)

The law should never receive such a construction as would tend to dry up the sources of natural affection. Nor should the child, who is innocent of the guilt of its parents, be denied all claim to the protection and love of its father. Neither should the father be denied the privilege of assuming voluntarily the duties and responsibilities which, in the courts of other States, are forced by law upon the putative father of his illegitimate child.

The judgment is reversed and the cause remanded, to be proceeded with in accordance with this opinion.

                                   Reversed and remanded.