Willie C. Anderson filed a petition in the county court of Carter county wherein she prayed to be adjudged the sole heir of the estate of J.R. Presley, deceased. The county court denied the petition, and she prosecuted an appeal to the district court of Carter county, wherein the district court affirmed the judgment of the county court, and this appeal is prosecuted to reverse the judgment of the district court.
The district court made findings of fact, the material parts of which were that J.R. Presley was born in Hawkins county, Tenn., about 66 years ago, in the same neighborhood in which Sallie Howe, mother of the petitioner, Willie C. Anderson, lived, and resided there continuously until 1895; that Willie C. Anderson was the illegitimate child of J.R. Presley and Sallie Howe; that J.R. Presley left Tennessee in the year 1895, and some time subsequent to said date took up *Page 161 
his residence at Woodford, Carter county, Okla., and resided there until he died May 18, 1920, and that on the date of his death he had only personal property consisting of a bank deposit in the First National Bank of Ardmore, Okla.; that on the date J.R. Presley left the state of Tennessee the petitioner, Willie C. Anderson, had reached her majority, and married A.M. Anderson, and that she and her husband continued to live in Hawkins county, Tenn., until about 6 years ago; that the acts of J.R. Presley, while domiciled in the state of Tennessee and prior to his removal to Oklahoma, were sufficient acknowledgment under the laws of the state of Oklahoma to constitute an adoption of the petitioner or legitimation, but were insufficient for legitimation of the petitioner under the laws of Tennessee.
The trial court concluded as a matter of law that the petitioner, under the facts, was incapable of inheriting the estate of J.R. Presley, deceased.
Counsel for the respective parties agree that the findings of fact are correct and that the only question to be determined on this appeal is whether the court erred in its conclusion of law.
Section 8057, Comp. Stat. 1921, provides:
"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court. The foregoing provisions of this article do not apply to such an adoption."
This section of the statute is identical with section 230 of the Civil Code of California, which was construed in the case of Blythe v. Ayres et al., 31 P. 915. It was held in that case that the word "adopts" is used in the statute in the sense of "legitimates." Adoption ordinarily refers to persons who are strangers in blood; legitimations to persons where blood relation exists.
The finding of the trial court is to the effect that the acts of J.R. Presley publicly acknowledging the petitioner as his child were all performed in the state of Tennessee while he was a domiciled citizen of that state, but the trial court did find that sufficient acts had not been performed by J.R. Presley while domiciled in the state of Oklahoma to meet the requirements of the statute for the purpose of legitimating the petitioner.
Counsel for the respective parties rely upon the case of Blythe v. Ayres et al., supra. The facts in the Blythe v. Ayres Case are in substance: That Thomas H. Blythe was a citizen of the state of California, and while temporarily sojourning in England in 1873 met Julia Perry, a native of England, domiciled therein. That on December 18, 1873, a child was born, Florence Blythe, who was the illegitimate child of Thomas H. Blythe and Julia Perry. That Florence Blythe and her mother, Julia Perry, remained in England until after the death of Thomas H. Blythe in 1883, in California. Thomas H. Blythe, while domiciled in California, had the child christened and baptized by his name, corresponded with her as his daughter, furnished her so much money each year, and made a will providing for her, which subsequently was lost or destroyed. The court held, under the facts, that Florence Blythe had been legitimatized and was entitled to inheritance.
The first paragraph of the syllabus is as follows:
"The status of a bastard, with reference to its legitimation by the acts of the father, are determinable by the laws of his domicile, and not by the laws of the domicile of the child and mother."
In the case of Irving v. Ford, 183 Mass. 448, 67 N.E. 366, 97 Am. St. Rep. 447, the court held:
"A statute purporting to make legitimate an illegitimate child can have no effect as against its father, who was not, when the statute was enacted, a citizen of, nor resident within the state, though he was such citizen and resident when the child was born."
Upon an examination of the authorities, we believe that the better rule, supported by the weight of authority, is that when an illegitimate child has been made legitimate in any mode sanctioned by any laws of the state or country in which it and its parents at the time resided, its status of legitimation becomes established and thereafter it may inherit as the legitimate offspring of such parents. Blythe v. Ayres et al., supra; 12 C.J., sec. 48; 5 R.C.L. sec. 14; In re Forney,43 Nev. 237, 186 P. 678; Lingen pro ami v. Lingen, Adm'x, et al., 45 Ala. 410.
Where some act other than the subsequent intermarriage of the parents is relied on for the purpose of establishing legitimacy, *Page 162 
such as the acknowledgment of paternity, the general rule is that the law of the father's domicile at the time of the legitimating act will determine the status of both parent and child. 5 R.C.L., sec. 14; Ross v. Ross, 129 Mass. 243, 37 Am. St. Rep. 321.
In the instant case the legitimating acts relied on by the petitioner having occurred in the state of Tennessee, and it being admitted that such acts were insufficient under the laws of said state to legitimate the petitioner, the judgment of the trial court must be affirmed.
JOHNSON, C.J., and BRANSON, HARRISON, and MASON, JJ., concur.
 On Rehearing.
Opinion by THOMPSON, C. The original opinion in this case was written by Justice Kennamer and approved and handed down by this court on the 9th day of January, 1924. A petition for rehearing was filed and response thereto and a rehearing was granted, and the cause comes regularly upon assignment for an opinion on rehearing.
The findings of fact by the court are agreed by all parties to be sustained by the proven facts, but the disagreement between the parties is upon the conclusions of law based upon the facts. Upon examination of the entire record and the original opinion in the case, we find that J.R. Presley was born and reared in Hawkins county, Tenn., in the same neighborhood in which Sally Howe, mother of the petitioner, Willie C. Anderson, lived, and that the said Presley resided in the said county and state continuously until 1895; that Willie C. Anderson was the illegitimate child of J.R. Presley and Sally Howe; that J.R. Presley left the state of Tennessee in the year 1895, and went to the state of Idaho to live, and thereafter moved to and took up his residence in the state of Oklahoma, in which his death occurred on the 18th day of May, 1920; and that at the time of his death he only had personal property, consisting of a bank deposit in the First National Bank of Ardmore, Okla.; that before the said J.R. Presley left the state of Tennessee, the petitioner, Willie C. Anderson, had reached her majority, and had married A.M. Anderson, and she and her husband continued to live in Hawkins county, Tenn., until about seven years ago; that the said deceased, J.R. Presley, had not at any time before he left the state of Tennessee or thereafter, complied with the laws of legitimation, required by the statutes of Tennessee, to legitimate the petitioner, Willie C. Anderson, and that at no time after he took up his residence in the state of Oklahoma did he perform any act of acknowledgment of his paternity of the said Willie C. Anderson under the laws for the adoption, or for legitimation, of the said Willie C. Anderson as his child; but it is conceded that the acts of recognition of J.R. Presley of the petitioner as his child, which occurred in the state of Tennessee before he removed therefrom and while the said petitioner and the said J.R. Presley were residents of said state, were sufficient under the laws of the state of Oklahoma, existing at the time of the death of the said J.R. Presley, to make said petitioner, Willie C. Anderson, heir of J.R. Presley, and sufficient to constitute an adoption of said illegitimate child by J.R. Presley, under the laws of the state of Oklahoma, and upon these facts the trial court found as a matter of law that the acts of adoption by J.R. Presley occurred in the state of Tennessee, while the residence, or domicile, of both parties was in that state, and under such circumstances the same did not constitute an adoption under the laws of the state of Oklahoma, in which he established his domicile after said acts.
To state the case briefly: It is the contention of the petitioner, notwithstanding the fact that the deceased, J.R. Presley, never performed any act of legitimation of her, either while residing in Tennessee or while residing in Oklahoma, that would entitle her to participate as an heir in the inheritance of his estate under the laws of Tennessee, and notwithstanding the fact he never did, while he was a resident of the state of Oklahoma, comply with the law of adoption, or legitimation, either in Oklahoma or in Tennessee, to entitle her to share as an heir in his estate, that, while he was domiciled as a resident of the state of Tennessee and while, so far as the record goes, he never had any intention at that time of removing to the state of Oklahoma, and it is reasonable to conclude that he had no knowledge of the laws of Oklahoma upon this subject, he recognized the petitioner by acts at that time and such acts were sufficient to constitute an adoption of the illegitimate child under the laws of the state of Oklahoma.
Attorneys for the petitioner rely particularly upon two cases, one being the case of Blythe v. Ayres (Cal.) 31 P. 915, and the other being the case of Wolf v. Gall (Cal.)163 P. 346. The Blythe Case, above *Page 163 
cited, has been carefully examined, and we find the facts in that case to be that Thomas H. Blythe was the father of Florence Blythe, an illegitimate child, by one Julia Perry, a native of England and domiciled therein; that Thomas Blythe was a resident of California and always maintained his domicile in that state, and that while living and maintaining his domicile in the state of California, he acknowledged his paternity of the said Florence Blythe and had her christened and baptized in his name, and corresponded with her as his daughter, and furnished her an annuity of $150 per year, and that such acts on the part of Blythe constituted, under the laws of California, a legitimation of the said Florence Blythe, which would entitle her to inherit his estate, but in that case, all the acts of Thomas Blythe, by which he legitimated Florence Blythe, were performed by him while he was domiciled in the state of California, and the court correctly held that the law of the domicile of the father controlled and, of course, if such acts on his part, by operation of law, legitimated Florence Blythe in the state of California, it met all the requirements of the law. But, in the instant case, the acts of J.R. Presley, under which the petitioner claims the right to inherit in this case, were all performed in the state of Tennessee, where he was then domiciled, and long before he removed from said state to Oklahoma, and it is admitted that said acts on his part did not constitute legitimation under the laws of the state of Tennessee, the state in which he was then domiciled. The third paragraph of the syllabus in the Blythe Case shows this state of facts and is as follows:
"Where a putative father was at all times domiciled in California, where he resided in a lodging house with his mistress, or alone in his cabin in the mountains, and was never married, had no family or relations except in a collateral line, whom he had not seen or communicated with since the birth of his child, more than 10 years prior to his death, who resided with her mother, in England, where the child was begotten and born, and where the mother subsequently married a resident husband, and was at all times domiciled, and the father on all occasions declared the child to be his, and acknowledged her paternity to the mother and grandmother before the child's birth, and had her christened and baptized by his name, and corresponded with her as his daughter, and furnished her only $150 a year, though he was a millionaire of plain and simple habits, and made a will providing for her, which was subsequently lost or destroyed, his acts constituted a full adoption and legitimation, within the meaning of Civil Code, sec. 230."
In the case of Wolf v. Gall, supra, the Court of Civil Appeals of California decided that the illegitimate children were legitimated, but in that case the court found that the parents of the illegitimate children, after the birth of the children, married and that by said marriage, under the laws of the state of California, the two children, who were illegitimate before said marriage, became legitimate by said marriage, and while in some respects the last above-mentioned case upholds the contention of the attorneys for the petitioner, yet we do not think, under the state of facts of that case, so different from the one under consideration here, that it can be given very serious weight here, and certainly it cannot be controlling in this case. We are of the opinion that the particular rule applicable to this case and the rule that seems to be sustained by the greater weight of authority is found in 5 R.C.L., sec. 14, page 920, which is as follows:
"Where some act other than the subsequent intermarriage of the parents is relied on to establish legitimacy, as, for instance, acknowledgment of paternity, the general rule is that the law of the father's domicile at the time of the legitimating act will be the proper law to determine the status of both parent and child. If by that law the act in question legitimates the bastard, the beneficial status thus created will in general be recognized everywhere, including the bastard's domicile, though by the law of the latter state, the act would not suffice to create a legitimation. On the other hand, if by the law of the father's domicile, legitimation is not the result of the act claimed to have that effect, though, under the bastard's domiciliary law, legitimation would result therefrom, the status of legitimation should not be conferred upon the bastard, for that would be to subject the status of the father to a law to which it is not properly subject. So it is held that the law of the domicile of the father, and not that of the mother or of the child, governs the question of the legitimation of a bastard child by the father's acknowledgment; and the bastard child of a domiciled citizen may be made legitimate, under a statute so permitting, by the father's public acknowledgment and adoption of it as such, although the mother has always been domiciled in another jurisdiction where the child was begotten and born and continued to live. Since it is the law of the father's domicile that governs, a statute making an acknowledgment sufficient to legitimate a bastard child cannot bind a putative father domiciled in another jurisdiction, although the child was born and domiciled in the jurisdiction wherein the statute was in force. *Page 164 
and the father made the acknowledgment while temporarily in that jurisdiction."
The principle announced in the above quoted section fits the facts in this case, for the acts relied upon in this case are other than the "subsequent intermarriage of the parents," and the petitioner relies upon the "acknowledgment of paternity," and the above authorities say:
"That the law of the father's domicile at the time of the legitimating act will be the proper law to determine the status of both parent and child."
It, therefore, becomes of tremendous importance in this case to know where the legitimating acts of J.R. Presley occurred, and it is admitted that the acts by which they claim that the petitioner was legitimated by her father took place in the state of Tennessee, the place of his then domicile, and not in the state of Oklahoma, where he afterwards acquired a domicile.
The Supreme Court of the state of Massachusetts, in the case of Irving v. Ford, 183 Mass. 448, 67 N.E. 366, says:
"The law of the father's domicile at the time of the legitimating act is the law by which to determine the status of both parties."
And, in 12 C.J., section 48, page 461, it is said:
"The status of legitimacy, once acquired, however, is not affected by a subsequent change of domicile on the part of the father."
But, in our view of this case, the act of legitimation must occur in the state of the domicile of the father at the time of the act of the father, and said act, which does not legitimate said child in said state at said time, cannot be held to legitimate the child if the father changes his domicile to another state after said act, although under the laws of the state to which he has changed his domicile, if such act had been performed in the state, to which he had removed, this cannot operate to legitimate said child. The case of Ross v. Ross, 129 Mass. 242, 37 Am. Rep. 321, sustains the views heretofore expressed in this opinion.
We are, therefore, of the opinion that the original opinion in this case should be adhered to, and that the conclusions arrived at in the original opinion express the correct view of the law under the admitted facts in this case, and we therefore are of the opinion that the judgment of the lower court should be, and it is hereby, affirmed.
By the Court: It is so ordered.