[Civ. No. 13857. Second Dist., Div. Three. July 30, 1943.]

GERTRUDE JENKINS, a Minor, etc., Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, and Robert J. Stahl and Edward J. Olstyn, Deputies City Attorney, for Appellant.

R. Lee Heath, Bodkin, Breslin & Luddy and E. E. Hitchcock for Respondent.

SHINN, Acting P. J.—This is an appeal by the Board of Pension Commissioners of the City of Los Angeles, and its members, from a judgment in mandamus ordering them to

grant to petitioner, Gertrude Jenkins, a minor, a pension under section 183 of article XVII of the Charter of the City of Los Angeles, as a child of Charles S. Jenkins, deceased, who retired as a member of the fire department of said city on August 1, 1923.

Respondent herein was born January 3, 1926, to said Charles S. Jenkins and Estelle Olme, who were never married to each other. She later, by adoption, became a legitimate child of her father.

Two points are urged on the appeal, namely, that no child of a city pensioner, born after his retirement, is entitled to receive a pension, and further that a child born illegitimate but adopted by its father is not entitled to a pension under the city charter, regardless of when it was born.

Section 183 of the city charter provides in substance as follows: ''Whenever any member of the Fire or Police Department shall die . . . after retirement . . . then an annual pension shall be paid in equal monthly installments to his widow, or child or children, or dependent parent or parents. . . . Said pension shall be paid to the widow during her lifetime or until she remarries, and thereafter . . . to the legally appointed guardian of the child or children of such deceased member until such child or children shall have attained the age of eighteen years, or to his child or children should there be no widow until such child or children shall have attained the age of eighteen years. . . .''

We do not consider either of appellants' contentions to be sustainable. ██ As to the first contention, we see no reason for holding that the child or children who have pension rights are those only who are in being at the time of the retirement of their father, to the exclusion of those born afterward. No such limitation is found in the charter, nor can the words which would be necessary to create that limitation be read into the charter under the guise of interpretation. From all that we find there, it would appear that the framers of its pertinent provisions had in mind any child or children living at the time of the death of the retired pensioner, without distinction between those born before and those born after retirement. The section would be no clearer to us if it referred in so many words to children born after retirement as well as to those born before. The word ''child'' as used means to us any child, and the word ''children'' means all children. They

could have no other meaning unless the charter defines them, which it does not. No good reason has been suggested to us why the plan of the charter should have embraced a purpose to discourage the birth of children to city firemen after their retirement by depriving them of the right to receive their father's pension or to share it with the children born before his retirement. However that may be, no such purpose found expression in the charter.

Upon the second point, we do not deem it necessary to discuss the cases cited by appellant in which it has been held that the words "child" or "children" refer to legitimate children, in the absence of words indicating that illegitimates are included and which express the thought that any tendency toward recognition of claims of illegitimate children would be a bad one. We may concede that illegitimates would have no pension rights under the charter. But at the time of the death of Charles S. Jenkins, respondent herein was his legitimate child by virtue of acts of adoption as found by the court and the force of the statute. The court found that respondent was publicly acknowledged by her father, taken into his family with the consent of his wife, and otherwise treated as if she were a legitimate child, and that she was duly adopted as his child. Section 230 of the Civil Code reads as follows: "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption." This has been the law for three-quarters of a century and it is not to be presumed that in adopting their charter the people of Los Angeles held an unsympathetic attitude toward this humane policy of the state.

The results which follow adoption of children by strangers under adoption statutes have been frequently stated. In *Estate of Newman*, (1888) 75 Cal. 213 [16 P. 887, 7 Am.St. Rep. 146], at 219, the court construed the provision of section 228 of the Civil Code that the adopted child and the person adopting "shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation" and held that one of the rights acquired by the child was that of inheriting the

estate of the adopting parent. In *Estate of Jobson,* (1912) 164 Cal. 312 [128 P. 938, 43 L.R.A.N.S. 1062], it was held that by virtue of the same language the adopting parent is entitled to inherit the estate of an adopted child. These are but some of the rights of the legal relation of parent and child established by adoption. ■ An adoption under section 230 of the Civil Code is no less potent. The declaration of the section that upon adoption by its father of a child born illegitimate, "such child is thereupon deemed for all purposes legitimate from the time of its birth" is as forceful and all-inclusive as words could make it. We do not doubt that the section was intended to mean just what it says. It is based upon an act of March 31, 1870, (Stats. 1869-70, p. 530, sec. 9) and our code commissioners, in speaking of its inclusion in the code, said: "This provision, like the rest, is new, but is so manifestly just, and the present state of the law is so unmerciful to innocent children, that it is presumed that no objection will be made to the change . . ." In *Wolf* v. *Gall,* (1916) 32 Cal.App. 286, 293 [163 P. 346, 350], after quoting the above the court further said of section 230: "This is perhaps the most liberal of all enactments removing the disabilities of children born out of wedlock" and the court later, on the same page, made reference to the "increasingly liberal and humane tendency of legislation in respect to illegitimate children."

In *Estate of Wardell,* (1881) 57 Cal. 484, it was held that an illegitimate child is the "child" of its mother within the meaning of a statute preserving rights of children omitted from wills of their parents, because the word is to be given its statutory rather than its common law meaning. And if because of its statutory right to inherit from its mother an illegitimate is her "child," upon what reasoning could we conclude that such a one is not the "child" of its father after its adoption by him? Any reason that might be advanced would be irreconcilable with the provisions of section 230. When adoption takes place, the eyes of the law are closed to the former status; so must the former status of respondent remain unseen to the Board of Pension Commissioners.

The judgment is affirmed.

Wood (Parker), J., and Shaw, J. pro tem., concurred.