[Crim. No. 1975.   Third Dist.   Dec. 31, 1946.]

In re JOSEPHINA NAVARRO, a Minor, on Habeas Corpus. LUIS NAVARRO, Appellant, v. GLADYS HULL, Respondent.

Fontaine Johnson and Thomas C. Perkins for Appellant.

Hardin Barry for Respondent.

ADAMS, P. J.—This is an appeal from an order of the Superior Court of Lassen County discharging a writ of habeas corpus, in a proceeding initiated by Luis Navarro, who sought thereby to secure the custody of a female child of the age of about seven years, which child had been born to petitioner and one Gladys Hull (both Klamath Indians), who were never married. The petition alleged that in June, 1945, petitioner had publicly acknowledged said child to be his own, and had, with the consent of his wife, Joan Navarro, received said child into his family, and had otherwise treated said child as his legitimate child; that he had by his actions adopted said child and was entitled to her full custody and control; that Gladys Hull had, on November 14, 1945, against his wishes removed the child to Lassen County and refused to surrender her to petitioner. He further alleged that Gladys Hull was not a fit and proper person to have custody of said child, but that petitioner was a fit and proper person.

In response to the writ Gladys Hull produced the child. She also filed a return in which she alleged that Navarro had never contributed anything toward the support of the child, that she, herself, had provided her with religious and educational training; that in June, 1945, she brought the child to Sacramento together with her two other children and permitted them to visit petitioner who was then living with one Juanita Clark, whom he subsequently married about November 14, 1945; that early in November, 1945, she took said children to Lassen County where she was then, and still is, employed. Petitioner, in an answer to said return, alleged that respondent was living in an illicit relationship with one Paul Sandover, and again alleged that she was not a fit and proper person to have the child's custody.

After a hearing the trial court filed a written opinion in which it was recited that Gladys Hull had taken the children to the home of petitioner in Sacramento and left them there with him and Joan Navarro for several months; that under

the circumstances it appeared "and the Court so finds, that petitioner openly acknowledged the said child as his, and he thereby adopted her as his child." It was further stated, however, that the court was not satisfied that petitioner was entitled to the exclusive custody of the child for the reason that the best interest of the minor was the compelling consideration in the matter; that from the moral aspects of the situation, as disclosed by the evidence, there was little choice as between father and mother, but that conditions in Lassen County, where the mother was then living and employed, did not disclose anything which would interfere with the welfare and best interests of the child; that under the circumstances shown by the evidence the court was satisfied that the custody remain with the mother, with the right of the father to visit his daughter at reasonable times, and possibly to have her with him occasionally at such times as would not interfere with her welfare.

On this appeal the cause is submitted on an engrossed settled statement from which it appears that respondent testified that she had had the exclusive care of the child, had put her in a Catholic school since 1942, and had purchased $1,400 worth of government bonds for her; that since the child was nine months old Navarro had never contributed anything to her support nor communicated with her until the child was brought to Sacramento in June, 1945, when she was left with him temporarily; and that petitioner voluntarily turned the child over to her in November, 1945. Navarro testified that he had lived with his present wife in Sacramento since February, 1944, and that they were married in November, 1945; that he had informed his said wife and others that the child was his and had treated her as his own legitimate daughter.

Assuming that the evidence in the case is sufficient to support the conclusion that petitioner legitimated his daughter, as seems to be conceded by both parties, the contention of appellant that he therefore became entitled to her exclusive custody remains for decision.

Civil Code, section 230, provides:

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes

legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption.''

The precise question raised here as to the rights of the natural mother of a child born out of wedlock, who has not intermarried with the father of the child, after the father of said child has ''adopted'' it as his legitimate child by compliance with the provisions of section 230, *supra,* apparently has not heretofore been before the appellate courts of this state. In numerous cases the rights of children under such circumstances to inherit from the father have been presented for determination. See *Estate of Lund,* 26 Cal.2d 472 [159 P.2d 643, 162 A.L.R. 606], and *Estate of Flood,* 217 Cal. 763, 767 [21 P.2d 579]. And the rights of such a child to a pension upon the death of its father were presented for determination in *Jenkins* v. *City of Los Angeles,* 60 Cal.App.2d 50 [140 P.2d 45]. But in none of such cases have the rights of the natural mother been in issue.

Section 200 of the Civil Code provides that the mother of an *illegitimate* unmarried minor is entitled to its custody, services, and earnings; and section 197 of said code provides that the father and mother of a *legitimate* unmarried minor child are equally entitled to its custody, services and earnings. But under the theory advanced by appellant in this case, when an illegitimate child has been legitimated by its father, neither section 200 nor 197 thereafter applies, and the father alone is entitled to the custody of such child, and the rights of the mother granted by section 200, *supra,* are, even without her consent, destroyed by the acknowledgment of parentage by the father in conformity with section 230, though it must be conceded that because of section 224 of the Civil Code a judicial adoption could not be effected without the consent of the mother of an illegitimate child unless she came within the exceptions there stated—which are not applicable here.

We think that appellant's position is untenable. ▮ Section 230, *supra,* is not, strictly speaking, an ''adoption'' statute, but a ''legitimation'' one. In *Blythe* v. *Ayres,* 96 Cal. 532, 559-560 [31 P. 915, 19 L.R.A. 40], the court said that ''the verb 'adopts,' as used in section 230, is used in the sense of 'legitimates,' and that the acts of the father of an illegitimate child, if filling the measure required by that statute, would result, strictly speaking, in the legitimation of such child, rather than in its adoption. Adoption, properly con-

sidered, refers to persons who are strangers in blood; legitimation, to persons where the blood relation exists. (See law dictionaries,—Bouvier's, Black's, Anderson's, and Rapalje's.) This is the distinguishing feature between adoption and legitimation, as recognized by all the standard law-writers of the day who have written upon the subject; and for the reason that the text-writers and the decisions of courts, to which we shall look for light and counsel, treat the subject as a question of legitimation, we shall view the matter from that standpoint. . . . Bar, in his work on International Law (p. 434), says: 'Legitimation of bastards, either by subsequent marriage or by an act of the government (*Rescriptum principis*), is nothing but a legal equalization of certain children illegitimately begotten with legitimate children.' In other words, the object and effect of section 230 is to change the *status* and capacity of an illegitimate child to the *status* and capacity of a child born in lawful wedlock.''

That case is frequently cited and quoted on this subject. In *Estate of Lund, supra,* where the rights of a child born out of wedlock to inherit from his father who had legitimated him were in issue, the court quoted from *Blythe* v. *Ayres* that portion of the opinion above quoted, to the effect that the verb ''adopts'' as used in section 230, is used in the sense of ''legitimates,'' and that adoption, properly considered, refers to persons who are strangers in blood, and legitimation to persons where the blood relation exists. Also see *Estate of McNamara,* 181 Cal. 82, 86 [183 P. 552, 7 A.L.R. 313], and *Estate of Flood, supra,* at page 767, where the word ''legitimation'' rather than ''adoption'' under section 230 is emphasized. In fact, we find authorities generally using the word ''legitimation'' under such statutes. See *In re Presley's Estate,* 113 Okla. 160 [240 P. 89, 90]; 10 C.J.S. 51-76; 7 C.J. 947 et seq.; 7 Am.Jur. 660 et seq.; 13 Cal.Jur. 933 et seq.

While the effect of ''legitimation'' of a child is to change its status from that of an illegitimate child to that of a legitimate one, it does not follow that when such change of status is effected the child ceases to be the child of its natural mother. If it does not become as to her a legitimate child, in which event section 197 of the Civil Code comes into play, it must still be as to her an illegitimate child, as to whom the provisions of section 200 are applicable. Section 230 provides that where legitimated by the acts of the father

the child is deemed for all purposes to be legitimate *from the time of its birth.* Certainly the statute does not mean that the child becomes the child of the wife of its father when the father has married one other than its mother. Such wife might, conceivably, have herself been unborn at the time of the birth of the child. Nor does such wife, by consenting to the legitimation of a bastard child of her husband, consent that it become her child or adopt it as such, nor does such child legitimated by its father acquire rights of inheritance from its father's wife. (See *Estate of Flood, supra,* at pages 777, 779; *Keith* v. *Ault,* 144 Ind. 626 [43 N.E. 924]. Furthermore, since it has been held that an unmarried father of an illegitimate child may legitimate it (see *Serway* v. *Galentine,* 75 Cal.App.2d 86, 90 [170 P.2d 32], and cases there cited), if the natural mother of the child is not to be considered its legitimate mother, then a child legitimated by its unmarried father would become, in effect, a half orphan, deprived of the rights of support by, and inheritance from its natural mother.

We think that no such results were intended, and that, upon the legitimation of the child by the father under the provisions of section 230, its status becomes that of the legitimate child of both of its natural parents, and that the rights of the child and of the parents thenceforth are the same as they would be had the child been born of the marriage of its natural parents. To this extent, then, the rights of the natural mother as set forth in section 200 of the Civil Code are modified for the benefit of the child, and neither of such parents has a superior right to its custody, services or earnings. This was obviously the position taken by the trial court, which considered the interests and welfare of the child as paramount to the equal rights of the parents, and, determining that such interests would be best served by leaving her with her mother, refused to disturb her present custody.

Appellant admits that there are no California decisions supporting his contention that he is entitled to the exclusive custody of the infant. He cites *Allison* v. *Bryan,* 21 Okla. 557 [97 P. 282, 17 Ann.Cas. 468, 18 L.R.A.N.S. 931], as a similar case, in which, under somewhat similar circumstances, it was held that the father of the legitimated child was entitled to its custody. However, the statutes of that state were not then the same as those of California. Section 36, article 2, chapter 59, Wilson's Revised & Annotated Statutes 1903, was the same as

our section 230, *supra;* section 5 of said statute provided, as did section 197 of our Civil Code prior to its amendment in 1913 (Stats. 1913, p. 52), that ''The father of a legitimate unmarried minor child is entitled to its custody, services and earnings.'' It is apparent therefrom that we have a distinction in statutory provisions that makes the *Allison* v. *Bryan* case inapplicable here. Furthermore, in the more recent case of *Ex parte Hendrix,* 186 Okla. 712 [100 P.2d 444], the Oklahoma court has limited the scope of its earlier decision in the Allison case. In *Ex parte Hendrix,* the mother of a child born out of wedlock sought to secure its custody as against the father. The trial court found that the respondent had publicly acknowledged the child as his own, having taken it into his home with the consent of his wife. It also found that neither of the parents was unfit to have the custody, and that while the mother had been guilty of serious breaches of the moral code, respondent had likewise been guilty of such breaches, and in view of the fact that petitioner was the mother of the child it would probably be given more loving care and attention in her home than in that of respondent, and it was to the best interests of the child that the custody be given to the mother. Respondent there urged that under section 5, *supra,* he was entitled to the custody, but the Supreme Court said that under the findings the trial court rightly considered the welfare of the child as of paramount importance.

In *Allison* v. *Bryan,* 26 Okla. 520 [109 P. 934, 138 Am.St. Rep. 988, 30 L.R.A.N.S. 146], also cited by appellant, the same parties as in the earlier case were involved. The father, who had been given the custody by the judgment in the earlier case, had denied the mother access to her child, and action was brought by the mother to require respondent to allow her such access. Respondent alleged in reply that aside from his legitimation of the child he and his wife had also adopted it by appropriate judicial proceedings, so that in addition to becoming legitimated it had become the child of himself and wife by such adoption. It appeared that the natural mother had not given her consent to its judicial adoption or forfeited her right to refuse such consent, but respondent contended that by his legitimation of the infant he had acquired such rights as rendered its adoption valid by his consent alone, since the statutes of the state provided that the natural parents of a child adopted by judicial decree were deprived of all legal rights. But the court said (p. 937 [109 P.]) that under the statute pro-

viding for legitimation the child was legitimated rather than adopted (citing *Blythe* v. *Ayres, supra*), and that adoption could not be legally made where the parents of a legitimate, or the mother of an illegitimate, child were living and had not consented. It added: "We have found no foundation for the claim that all rights on the part of the mother of an illegitimate child, consistent with its best interests, are lost in the mere exercise by the father of his right of legitimation. The interests of the child are of first and controlling importance." Also it said that while, under section 4899 of the Compiled Laws of Oklahoma 1909, the father of a legitimate unmarried minor child was entitled to its custody and earnings, and the reciprocal rights and duties between father and child were the same as those existing between legitimate parents and their legitimate children, still, "as to its mother, when her rights are involved, it is an illegitimate child, and the law is that an illegitimate minor child cannot be adopted without the mother's consent, and that which cannot be done directly cannot be done indirectly. Except for the legitimating statute, no one could have disturbed this woman's complete right of custody in and to her child, and in our judgment it would be a strained and unnatural construction of this statute and the rights of the parties under it to yield to the contention of counsel for defendant, for 'the law should never receive such a construction as would tend to dry up the sources of natural affection.' *Barela* v. *Roberts,* 34 Tex. 554. If the mother desires to give her consent to adoption, she of course may do so, but she cannot be lawfully stripped of her inherent right to say *no.*" The right of the mother to have access to and to visit her child was affirmed. Also the court, in disposing of respondent's contention that Mrs. Allison should have been made a party to the proceeding, said (p. 941 [109 P.]): "Mrs. Allison is not a necessary party in either of these cases. *The child by the act of the father was not made her heir. Barnes et al.* v. *Allen et al.,* 25 Ind. 222; *Keith et al.* v. *Ault et al.,* 144 Ind. 626, 43 N.E. 924. *Nor did it enter her household as her child.* The statute under which it was legitimated would have been rendered in very many instances nugatory and its effectiveness largely curtailed, if acting under it the child to be legitimated were to take as an heir of the wife of its father, as but few if any wives could be found who would consent to receive into their homes such children when to do so would make them heirs equally with their own children, and in practically all of

such cases the wife would refuse to permit its entrance in the family. The legitimation of the child under this statute was accomplished by the father, and the wife's sole connection with the transaction was the giving of her consent to its reception into the family, where it might be treated as if it were legitimate." (Italics added.)

Another Oklahoma case, also cited by appellant, which tends to clarify the meaning and effect of legitimating statutes is *Templeman* v. *Bruner*, 42 Okla. 6 [138 P. 152, 139 P. 993], which upheld the right of the mother of an illegitimate child which had been legitimated by its father, to inherit an Indian allotment from the child to the exclusion of the father. The court cited and quoted from *Allison* v. *Bryan* to the effect that the status of the child as an illegitimate child of its mother was not affected by the legitimation by its father, saying that where the rights of the mother were involved the child was still illegitimate and under the statutes of the state its mother was entitled to inherit from it as an illegitimate child.

The scope of the decision in *Allison* v. *Bryan, supra,* is stated in *In re Buffington's Estate,* 169 Okla. 487 [38 P. 2d 22], where it was held that decedent Buffington had legitimated a son prior to his marriage to the widow who survived him, and that such legitimated child was entitled to share in his estate. Claimants opposing the rights of the son contended that he had never been legitimated as he had not remained in his father's home. Certain language used in the Allison case to the effect that a legitimated child should remain in the home of its father was there relied upon by appellants as it is in this case. There the court said (p. 26 [38 P.2d]) : "The question of the right of the respective parents to the care and custody of the child after such adoption is clearly a question apart from that of adoption itself and depends largely upon what is for the best interest of the child, and that was in fact the only question decided in the Allison case, for there the adoption was a conceded fact."

It therefore appears that even in Oklahoma, where the statutes, following the common law rule, give the father of a legitimate, or legitimated, child the superior right to its custody, the courts may, nevertheless, in a contest between the natural mother and the father of a legitimated child, award the custody to the one or to the other as the best interests of the child dictate. More clearly, then, should such be held to be the power of the courts of this state in view of the provisions

of section 197 of the Civil Code, *supra*. ■ And the trial court in this case, having determined that the child's welfare will be best served, for the present at least, by leaving her with her mother, its determination, if supported by evidence, is conclusive upon this court unless a clear case of abuse of discretion is shown (*Munson* v. *Munson,* 27 Cal.2d 659, 666 [166 P.2d 268].) No such abuse is shown here. The evidence shows that the child had always been in the care of her mother who had amply provided for her present as well as her future welfare, and until the child was brought to Sacramento in June, 1945, to visit her father, petitioner had not, since she was nine months old, seen or communicated with her, or contributed anything to her support. The evidence shows that the mother is industrious and has had and now has lucrative employment. Also, section 138 of the Civil Code provides that, other things being equal, the custody of a child of tender years should be given to the mother.

The order appealed from is affirmed.

Thompson, J., concurred.

PEEK, J.—I dissent. As I interpret the majority opinion it holds that legitimation of a child under section 230 of the Civil Code does not amount to an adoption in the full sense of that term but merely changes "its status from that of an illegitimate child to that of a legitimate one" and the child thereby becomes "the legitimate child of both of its natural parents." From this premise the majority holds that upon the question of custody (which is the primary issue before this court) "neither of such [natural] parents has a superior right to its custody. . . ." In support thereof the majority cites the case of *Munson* v. *Munson,* 27 Cal.2d 659 [166 P.2d 268], wherein the Supreme Court stated that the trial court having found upon sufficient evidence that it was for the best interest of the child that custody be awarded to the father, such finding cannot be disturbed. Relying upon the cited case the majority herein then states that "the trial court in this case, having determined that the child's welfare will be best served, for the present at least, by leaving her with her mother, its determination, if supported by evidence, is conclusive upon this court unless a clear case of abuse of discretion is shown." The opinion concludes that the determination of the trial court is supported by sufficient evidence, that no abuse of discretion

is shown, and that under section 138 of the Civil Code, everything else being equal, the custody of a child of tender years should be given to the mother.

I cannot agree with such conclusion. I believe that section 230 is an adoption as well as a legitimation statute, that it does more than merely change the status of the child from illegitimacy to legitimacy in that it also effects a change in the relationship of the child toward each of its natural parents, conferring upon the father who has received the child into his custody and his wife who has consented thereto a prima facie right to custody and to the retention of that custody unless and until he or she is shown to be unfit, under the rule of *Roche* v. *Roche,* 25 Cal.2d 141 [152 P.2d 999], and cases cited therein, as distinguished from the rule in the Munson case, where the contest was between husband and wife over the custody of a child born during their marriage, there being no third person involved and no change in relationship.

This conclusion is fortified by two recent decisions of the courts of this state which are given only passing mention in the majority opinion, namely, *Jenkins* v. *City of Los Angeles,* decided by Division 3 of the Second District, July 1943, and reported in 60 Cal.App.2d 50 [140 P.2d 45], and *Estate of Lund,* decided by the Supreme Court, May 1945, and reported in 26 Cal.2d 472 [159 P.2d 643, 162 A.L.R. 606]. It is true, as observed by the majority opinion herein, that the first of these cases relates to the right of a child to a pension upon the death of its father, that the second case relates to the right of a child to inherit from its father, and that in neither case was the precise question here in issue considered. However, inasmuch as the present case is one of first impression in this state, those decisions which announce or discuss the basic principles which necessarily must govern the disposition of the present case, should not be disregarded.

The Jenkins case, in dealing with a particular right which flows from a legitimation under section 230, discusses generally the rights which said section confers, and declares that those rights are the same as in the case of any other adoption. Thus the court therein, after referring to what it terms the ''forceful and all-inclusive'' wording of said section, states: ''We do not doubt that the section was intended to mean just what it says.'' Additionally, after indicating some of the rights flowing from the legal relation of parent and child which an adoption by court order establishes, de-

clares: "An adoption under section 230 of the Civil Code is no less potent." Throughout its opinion said court treats the legitimation as a species of adoption effectuated by the acts of adoption and the force of a self-executing statute. Thus the court says: "But at the time of the death of Charles S. Jenkins, respondent herein was his legitimate child by virtue of acts of adoption as found by the court and the force of the statute." (60 Cal.App.2d pp. 52-53.)

The case of *Estate of Lund, supra,* while dealing primarily with a question of inheritance, nevertheless contains an exhaustive and well considered discussion which encompasses virtually the entire subject of the operation and effect of section 230. Therein, among other things, are emphasized the liberal policy which the Legislature and courts of this state have established with regard to adoption by legitimation, and also the integral nature of the family relationship which such an adoption creates.

It appears to me that the comprehensive opinion in the Lund case makes unnecessary the strong reliance which the majority opinion places on the dictionary definitions which it quotes from the case of *Blythe* v. *Ayres* (1892), 96 Cal. 532 [31 P. 915, 19 L.R.A. 40]. The majority by so doing, I feel, has failed to appreciate what to me is the true significance of the interpretation which the Supreme Court in the much later Lund decision gave to such language, when, after carefully analyzing the same, it stated in summation:

"So considered, it becomes the more obvious that it is reasonable to conclude that the Legislature by declaring in section 230 that 'The foregoing provisions of this chapter do not apply to such an adoption,' i. e., to *legitimation,* meant to confer the broad benefits of that procedure without the limitations express or implicit in ordinary adoption proceedings." (26 Cal.2d 492-493.)

Another result of the failure of the majority to construe our statute as it has been interpreted in the Lund and Jenkins cases is that it thereby is compelled to rely upon authorities from other jurisdictions which concededly are predicated on statutes different from our own and which, therefore, may not be relied upon. In so doing the opinion must perforce disregard the matter of local public policy, cogently expressed in the Lund decision in connection with this very subject as follows:

"We deem it incontestable that each state may formulate its own public policy in respect to legitimation and can enact laws to carry out its policy." And, quoting with approval from *Blythe* v. *Ayres, supra,* " 'Legitimation is the creature of legislation. Its existence is solely dependent upon the law and policy of each particular sovereignty. The law and policy of this state authorize and encourage it. . . .' " (26 Cal.2d pp. 485-486, 490.)

A similar sentiment is voiced in the Jenkins case, wherein the court, after quoting the language of section 230, says:

"This has been the law for three-quarters of a century and it is not to be presumed that in adopting their charter the people of Los Angeles held an unsympathetic attitude toward this humane policy of the state." (60 Cal.App.2d 52.)

Specifically, then, in holding that section 230 is not an adoption statute and does not confer on the legitimating father the broad benefits which adoption proceedings generally confer on the adoptive parents, namely, the prima facie right to the custody of the child, the majority opinion runs directly counter to the unmistakable language previously quoted from the Lund case to the effect that the Legislature by the wording of said statute meant to confer by the acts of adoption by legitimation the broad benefits of that procedure "without the limitations express or implicit in ordinary adoption proceedings."

In other words, the majority opinion, by differentiating adoption by legitimation under section 230 from adoption by a court proceeding, relying upon the language in the Blythe case which, as previously mentioned, was quoted and analyzed in the Lund case, proceeds to determine that the rights of and the correlative duties toward, a child that has been adopted by legitimation are less comprehensive than those which attach where a stranger to the blood has been adopted. Yet the Supreme Court in the Lund case arrived at precisely the opposite conclusion in considering the same language quoted from the Blythe case, namely, that the difference between adopting a blood relative and a stranger to the blood should militate more liberally in favor of the legitimated child and without the restrictions imposed in the case of an adoption of a nonrelative. Thus the limitation that an adult child may not be adopted by court proceedings was held not to apply to a natural child adopted by legitimation under said section 230. However, the result of the rule of

the majority opinion would be that a father who wished to adopt his illegitimate minor child into his family and have at least the prima facie right to custody which a stranger adopting the child would have, would be required to follow the formal procedure outlined by the sections of the Civil Code preceding section 230—which is the very thing that section 230 says does not have to be done.

By other language in said section 230, the wife of the child's father is expressly made a party to the legitimation to the extent that her consent must be given before the child may become a part of the family, which provision thereby makes the wife a definite member of the family unit. The majority opinion disregards the presence of this essential requisite entirely, for, if she is not to share in the duties, responsibilities and rights, including that of custody of the child who has become a part of her household, it is difficult to understand the reason for making mandatory her acquiescence, and consequently the language of the statute becomes meaningless.

The majority opinion likewise—and this seems to me particularly noteworthy—fails to take into consideration the fact that the reception of a minor child (in this case a child of seven and one-half years) into a family necessarily contemplates the taking over of the custody of such child, and that it is the intendment of section 230, as construed by the Supreme Court in the Lund case, that such reception—and therefore such custody—shall be permanent and continuing and not merely temporary and transient.

"Once a child had been unconditionally received into the family, he was received permanently and continuingly unless and until such reception was revoked (if in its nature it could be revoked) . . ." (*Estate of Lund, supra,* at pages 495-496.)

"The biological relationship of father and son, and the de facto family relationship which the father had established, are not transient or volatile things which may exist one moment and be nonexistent the next, or which depend for their continuance upon repetitions of the original words or acts. Once proclaimed and established they exist as facts for all times and in all places." (*Estate of Lund, supra,* at p. 496.)

Indeed, the language of section 230 which makes the child legitimate "for all purposes"—which, as has been seen should

be interpreted as meaning likewise "adopted for all purposes," would seem to comprehend the taking of custody as one of the purposes or incidents of an adoption by legitimation.

It must be conceded to be the law that in the case of ordinary adoption proceedings, upon the adoption of the child the rights of the natural parents cease and the adoptive parents become in the eyes of the law the only parents whose rights must be considered. (*Estate of Jobson,* 164 Cal. 312, 316-317 [128 P. 938, 43 L.R.A.N.S. 1062]; *Younger* v. *Younger,* 106 Cal. 377, 379-380 [39 P. 779]; *Mitchell* v. *Brown,* 18 Cal.App. 117, 125 [122 P. 426].) Therefore, it would seem to follow that any question between parents that may now arise would be solely between petitioner and his wife, and not between petitioner and respondent. Since an adopted child becomes the child not of one but of both adoptive parents, and since in the case of an ordinary adoption one of the rights that a natural parent loses or relinquishes in favor of the adopted parent or parents is the right to the custody of the child, therefore, "From the time of the adoption, the adopting parent is, so far as concerns all legal rights and duties flowing from the relation of parent and child, the parent of the adopted child. From the same moment, the parent by blood ceases to be, in a legal sense, the parent. His place has been taken by the adopting parent." (*Estate of Jobson, supra,* at pp. 316, 317. See, also, Civ. Code §§ 228, 229.)

That the same result follows from an adoption by legitimation was in effect decided in the early case of *Graham* v. *Bennet,* 2 Cal. 503, 506-507, wherein the court declared that legitimation pursuant to a void marriage under section 2 of the Act to Regulate Descents and Distributions, which is now section 85 of the Civil Code, gives to the father "the unquestioned right to their custody, control and obedience."

The entire tenor of the opinion in the case of *Estate of Lund, supra,* strongly points to a like result in the case of a legitimation pursuant to section 230 of the Civil Code. For instance, the court in that case observed: "Here the petitioner was received into the intimate family circle, the household itself; he became as much a member of the family as was his half-brother Frank or his half-sister Blanche." (26 Cal.2d 494.) If therefore in the present case Josephina became a part of petitioner's family pursuant to the procedure taken under section 230, as the trial court in effect found she did, it was because the law invested petitioner with the right to treat

her as a part of his family which in the case of a minor child includes the right to custody.

There appears to be nothing in sections 197 and 200 of the Civil Code which militates against the application in the present case of the general rules governing custody in cases of adoption. Section 200 has no bearing on the question, as Josephina is not an illegitimate child, but, as found by the trial court, a legitimate child. Likewise, section 197 has no application, because there is here no controversy between the father and his wife, who stands *in loco parentis* as the child's mother.

If it be insisted that the term "mother" as used in said section 197 refers to the natural mother, then it must be held that the case comes within the exception "If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings."

Moreover, even if the rule rather than the exceptions stated in section 197 were otherwise applicable to the situation in the present case, still the result would be that such general rule must be deemed to be modified by the provisions of the special statute governing adoption by legitimation—a matter that will be discussed hereinafter.

The majority opinion states: "Certainly the statute does not mean that the child becomes the child of the wife of its father when the father has married one other than its mother." However, the authorities cited do not support the statement. *Estate of Flood*, 217 Cal. 763, 780 [21 P.2d 579], carries an implication to the contrary, it being said that "Flood, a married man, maintained *a family consisting of his wife and petitioner* (the child), and to this family and to persons who visited and associated with it, he declared the relationship." (Italics added.) Also, it does not appear that the cited case of *Keith* v. *Ault*, 144 Ind. 626 [43 N.E. 924], is in point, for in that case the marriage of the child's father took place after the adoption. Obviously, where the adopting father afterward marries a woman who was not a party to the adoption proceedings, the new wife does not incur the responsibilities or acquire the rights of an adoptive parent. The same essential difference in factual situation appears to have existed in the case of *Barnes* v. *Allen*, 25 Ind. 222. (See *Paul* v. *Davis*, 100 Ind. 422, 426, also cited in the majority opinion and included in a quotation from the opinion in *Allison* v. *Bryan*,

26 Okla. 520 [109 P. 934, 138 Am.St.Rep. 988, 30 L.R.A.N.S. 146].) However, the Indiana Supreme Court in the Keith case, *supra,* recognizes the fact that a different rule might obtain in a case where the adopting father was married prior to the adoption. Thus said court stated:

"Had James H. Lemmon been married before his marriage to Mary A. Lemmon, had appellant been adopted by him and his former wife, and had Mary A. Lemmon been a second and childless widow, as was the case in *Markover* v. *Krauss, supra,* [132 Ind. 294 (31 N.E. 1047)], then we should have another question, and one not under the statute here under consideration, but under section 2644, Rev.St. 1894 (section 2487, Rev. St. 1881)." (43 N.E. 925.)

The last case cited by the majority opinion on this point, *Serway* v. *Galentine,* 75 Cal.App.2d 86 [170 P.2d 32], does not appear to touch any of the questions involved herein. As far as implications therein are concerned, they are all to the effect that the family into which the child may be received under section 230 may consist of the adopting father and the woman with whom he is living without having been legally married, and who is not the natural mother of his child. (See *Estate of Gird,* 157 Cal. 534, 545 [108 P. 499, 137 Am.St.Rep. 131], quoting from *Garner* v. *Judd,* 136 Cal. 394 [68 P. 1026], cited in the Serway case at p. 90.)

Neither do I believe that the foregoing cases support the further statement in the majority opinion: "nor does such child legitimated by its father acquire rights of inheritance from its father's wife." This question is one which appears not to have been answered in this state. (See 29 Cal.L.Rev., pp. 187-191.) Moreover, if the answer should be the one which the dictum in the majority opinion declares, this would result solely from the operation of a special statute, namely, section 255 of the Probate Code, and not from the general provisions of the legitimation or adoption laws.

The majority opinion does not mention the comparatively recent case of *Fladung* v. *Sanford,* 51 Ariz. 211 [75 P.2d 685], which factually bears a close resemblance to the present case and which involves a statute substantially identical with section 230 of the Civil Code. On the other hand, the opinion gives undue weight to the decision in *Allison* v. *Bryan,* 26 Okla. 520 [109 P. 934, 138 Am.St.Rep. 988, 30 L.R.A.N.S. 146], which is based on a narrower statute and appears to be out of harmony not only with the liberal policy established in

this state but also with that which now obtains generally in the majority of jurisdictions.

This is pointed out in the annotation in 114 A.L.R. 271, wherein the author says:

"It has been held that the mother of an illegitimate child, by consenting to a deed of adoption by its natural father which relates solely to the child's right of inheritance from its father, and which is by its terms limited according to the provisions of a statute *which does not undertake to establish the relation of parent and child further than to give the child a right of inheritance,* does not thereby yield her rights under a statute providing that an illegitimate child cannot be adopted without the consent of its mother, and hence she is entitled to an order enforcing her right to visit the child, and to have the child visit her. (*Allison* v. *Bryan* (1910), 26 Okla. 520, 109 P. 934 [138 Am.St.Rep. 988, 30 L.R.A.N.S. 146].)

"Adoption statutes are not generally regarded as intended to make a complete change in the common law; and the prevailing tendency at the present time is in the direction of a liberal construction. 1 Am.Jur. Adoption of Children, p. 625. And it is a general principle that a statutory proceeding of adoption, when legally conducted, terminates absolutely all legal relations between the minor and his natural parents or former legal guardian. 1 Am.Jur. Adoption of Children, p. 650." (Italics added.)

It may be observed in passing that preceding the footnote referred to in the American Law Reports, volume 114, *supra,* is a report of the interesting decision of *Spencer* v. *Franks,* 173 Md. 73 [195 A. 306, 114 A.L.R. 263], which holds that without giving a right to general custody a provision in a decree permitting a right of visitation is prejudicially erroneous. This holding, if followed in the case at bar, would make the decree herein invalid, and at least require a modification thereof.

If I am correct in concluding that an adoption by legitimation carries with it the benefit of all the incidents of an adoption by court order, and the prima facie right to custody in the adopting parent is one of those incidents, then it follows as between petitioner, as the legitimating and adopting father, and respondent, as the erstwhile parent from whom the child has been adopted and who is now in contemplation of law a stranger to the family of which the child has become a member, petitioner must be recognized as having the prima facie

right to such custody, in the absence of a showing of unfitness to assume it.

This is clearly the rule in the case of an ordinary adoption. As the Supreme Court stated in the case of *In re Santos,* 185 Cal. 127, 132 [195 P. 1055] :

"The persons adopting the child acquire the paramount right to the custody of the child, for, after the adoption, they occupy the position of parents and shall 'have all the rights and be subject to all the duties of that relation.' (Civ. Code, § 228.) The right of parents to the care and custody of their child yields only for the most cogent and compelling reasons, to wit, in case the parents are shown by clear evidence not to be fit or proper persons to have such custody. (*Guardianship of Akers,* 184 Cal. 514 [194 P. 706] ; *Ex parte Brown,* 98 Kan. 663 [159 P. 405].)"

And again in *Bell* v. *Krauss,* 169 Cal. 387, 391 [146 P. 874], it was said :

"*Prima facie* a parent is presumed competent and he is entitled to have the custody of his child unless found by the court to be incompetent. (*In re Campbell,* 130 Cal. 383 [62 P. 613].)"

In fact, the rule is not confined to cases of adoption, but extends to all cases where the question of the custody arises as between a parent and one who does not sustain a parental relation to the child. (*Roche* v. *Roche,* 25 Cal.2d 141, 143 [152 P.2d 999] ; *Stever* v. *Stever,* 6 Cal.2d 166, 169 [56 P.2d 1229] ; *Newby* v. *Newby,* 55 Cal.App. 114 [202 P. 891].) In the Roche case the court stated :

"In the case of *Stever* v. *Stever,* 6 Cal.2d 166 [56 P.2d 1229], this court held that section 197 of the Civil Code should be construed with subdivision 1 of section 246 of said code (now section 1406 of the Probate Code) and they contemplate that the natural right of a parent to the care of a minor child, if a fit and proper person, shall prevail as against an entire stranger, the law presuming, in the absence of other evidence or findings showing the contrary, that either parent is a proper person to whom the minor's care should be awarded. . . ."

If, then, the provisions of section 197 which the majority opinion purports to follow must be read with and deemed modified by the code provisions relating to guardianship, as was held in the Stever case, *supra,* at page 169, and if the provisions of said section 197 must be read with and deemed

modified by the code provisions relating to adoption by court order—specifically section 228 of the Civil Code—as was held in the case of *In re Santos, supra,* at page 132, then logically it would seem to follow that the provisions of section 197 must be read with and deemed modified by the provisions of section 230 of the Civil Code relating to adoption by legitimation.

As so read and so modified, said provisions invest petitioner as the natural father of the child with the presumption of competency and fitness, or, as stated in the Roche and Stever cases, *supra,* of being a proper person to whom the minor's care should be awarded, in the absence of either evidence or finding showing the contrary.

This I believe is the principle that should have been applied herein, and not the rule of the case of *Munson* v. *Munson, supra,* which obtains as between divorced or separated parents *where there has been no change in the relationship of the child toward either of them.* But where there has been a change in such relationship, as in the case of a guardianship, an adoption by court decree, or an adoption by legitimation, the rule of the Roche and Stever cases should be applied and not that of the Munson case.

On the hearing below the trial court did not find that the petitioner was unfit or incompetent to have the custody of his child. To the contrary, the court granted him "the right . . . to visit the child at reasonable times and possibly to have the child with him occasionally at such times as would not interfere with the welfare and best interest of the child. Likewise, the court was of the opinion that "From the moral aspects of the situation as disclosed by the evidence, there is little choice as between the father and the mother."

It follows that the trial court was not warranted in endeavoring to apply the rule of the Munson case of balancing conveniences or supposed advantages to the child and then depriving petitioner of the right of custody to which as an adoptive parent he is entitled *unless* found to be unfit. Instead, said court should have determined whether the petitioner is a fit and proper person to have the custody of his daughter Josephina and to retain her as a member of the family into which she had been received.

Therefore, I believe the judgment should be reversed and the cause be remanded to the trial court with instructions to re-

ceive further evidence directed to said issue and to make a determination thereon.

Appellant's petition for a hearing by the Supreme Court was denied January 27, 1947.